IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES ex rel. JAMES KRAXBERGER, | ) ) ) | |
| Relator/Qui Tam Plaintiff, | ) ) | Case. No. 11-CV-0590-W-FJG |
| v. | ) ) | |
| KANSAS CITY POWER & LIGHT CO., | ) ) | |
| Defendant. | ) ) ) | |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANT KCP&L'S MOTION TO DISMISS

July 2, 2012

Respectfully submitted,

**GRAVES BARTLE MARCUS & GARRETT LLC**

Todd P. Graves, Mo. Bar No. 41319
Edward D. Greim, Mo. Bar No. 54034
Clayton J. Callen, Mo. Bar No. 59885
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Telephone: (816) 256-4144
Facsimile: (816) 817-0863
edgreim@gbmglaw.com

*Counsel for Defendant KCP&L*

**Table of Contents**

Introduction ................................................................................................................................ 1

    I.     Alleged Violations of Federal Law Do Not State a Claim

           Under the FCA .................................................................................................. 2

           A.  Relator Abandons "False Certification" Claims ..................................................... 2

           B.  Relator Invents a New Theory of Liability Under the FCA ................................. 3

           C.  Relator Does Not Allege a False Statement of Compliance ................................. 8

    II.    Relator Does Not Allege Fraudulent Inducement of the Contract ................................ 9

           A.  Alleged "Bribes" and "Gratuities" Are Not False Statements

              or Fraudulent Conduct ............................................................................................. 10

           B.  Allegedly "Promised" Rates Do Not Constitute Fraudulent

              Statements ................................................................................................................. 11

Conclusion ................................................................................................................................ 13

Table of Authorities

**Cases**

*Bauer v. Southwestern Bell Tel. Co.*,

    958 S.W.2d 568 (Mo. App. E.D. 1997) .......................................................................... 11

*Boisjoly v. Morton Thiokol, Inc.*,

    706 F. Supp. 795 (D. Utah 1988) ............................................................................... 11, 13

*Deer v. Cherokee County, Iowa*,

    183 F.R.D. 642 (N.D. Iowa 1999) .................................................................................. 13

*Hammack v. Automated Info. Mgmt., Inc.*,

    981 F. Supp. 993 (N.D. Tex. 1997) ................................................................................... 4

*Heckler v. Community Health Serv. of Crawford County, Inc.*,

    467 U.S. 51 (1984) .......................................................................................................... 12

*Latta v. Robinson Erection Co.*,

    248 S.W.2d 569 (Mo. 1952) ........................................................................................... 10

*Miller v. Holzmann*,

    563 F. Supp. 2d 54 (D.D.C. 2008) .................................................................................. 10

*New York v. Amgen Inc.*,

    652 F.3d 103 (1st Cir. 2011) *cert. dismissed,* 132 S. Ct. 993 (2011) ....................... 6, 7, 8

*United States v. McNinch*,

    356 U.S. 595 (1958) .......................................................................................................... 4

*United States v. TDC Mgmt. Corp., Inc.*,

    288 F.3d 421 (D.C. Cir. 2002) ..................................................................................... 7, 8

*U.S. ex rel. Bettis v. Odebrecht Contractors of California, Inc.*,

    297 F. Supp. 2d 272 (D.D.C. 2004) ............................................................................. 9, 10

*U.S. ex rel. Bidani v. Lewis*,

    264 F. Supp. 2d 612 (N.D. Ill. 2003) ............................................................................ 7, 8

*U.S. ex rel. Compton v. Midwest Specialties, Inc.*,

    142 F.3d 296 (6th Cir. 1998) ........................................................................................ 5, 7

*U.S. ex rel. Costner v. United States*,

    317 F.3d 883 (8th Cir. 2003) ............................................................................................ 11

*U.S. ex rel. Durcholz v. FKW Inc.*,

    189 F.3d 542 (7th Cir. 1999) ..................................................................................... 11, 12

*U.S. ex rel. Graves v. ITT Educ. Services, Inc.*,

    284 F. Supp. 2d 487 (S.D. Tex. 2003) *aff'd,* 111 F. App'x 296 (5th Cir. 2004) ......... 4, 10

*U.S. ex rel. Hendow v. Univ. of Phoenix*,

    461 F.3d 1166 (9th Cir. 2006) ........................................................................................ 10

*U.S. ex rel. Hopper v. Anton*,

    91 F.3d 1261 (9th Cir. 1996) ........................................................................................ 4, 9

*U.S. ex rel. Lee*,

    2004 WL 1638252 .............................................................................................................. 8

*U.S. ex rel. Oliver v. Parsons Co.*,

    195 F.3d 457 (9th Cir. 1999) ........................................................................................ 6, 7

*U.S. ex rel. Vigil v. Nelnet, Inc.*,

    639 F.3d 791 (8th Cir. 2011) ........................................................................................ 4, 5

*U. S. ex rel. Weinberger v. Equifax, Inc.*,

    557 F.2d 456 (5th Cir. 1977) ............................................................................................... 4

*U.S. ex rel. Wilkins v. United Health Group, Inc.*,

    659 F.3d 295 (3d Cir. 2011) .................................................................................... 2, 5, 9

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,

    525 F.3d 370 (4th Cir. 2008) ............................................................................................... 9

**Statutes**

10 U.S.C. § 2306a ................................................................................................................... 9

18 U.S.C. 201(b) ..................................................................................................................... 9

31 U.S.C. § 3729(a)(1)(A-C) (False Claims Act) ................................................................. 1, 3, 5

**Regulations**

FAR § 41.201 ........................................................................................................................ 12

FAR § 41.402(c) .................................................................................................................... 13

FAR § 52.203.3 ................................................................................................................... 8, 9

FAR § 52.203.11 ..................................................................................................................... 8

**Other Authorities**

Black's Law Dictionary 8th ed. (2004) .................................................................................... 10

## Introduction

The fatal flaw of Relator's Complaint is simple: he has failed to allege the existence of a materially false claim or statement. As such, he has failed to state a claim under the False Claims Act, and the Complaint should be dismissed. Relator's *Memorandum in Opposition to Defendant's Motion to Dismiss* (Dkt. 27) does not and cannot cure this fundamental deficiency. Relator's brief is laced with references to "corrupt" and "fraudulent" conduct and "inferences" that he suggests may be drawn from the vague allegations in his Complaint. Relator misses the relevant point, however: allegations of "corrupt" and "fraudulent" conduct do not state a claim under the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(A-C). The FCA requires more.

Each of Relator's claims is based upon the following conduct: (1) KCP&L allegedly providing impermissible "gratuities" and "bribes" to GSA employees, and (2) KCP&L allegedly charging electricity rates higher than the rates it had "promised" to the GSA prior to execution of the parties' contract. Assuming both of these allegations as true, Relator has failed to state a claim for relief under the FCA.

First, as the Eighth Circuit has cautioned, the FCA is not intended to serve as a general enforcement mechanism for federal law. Its scope is much narrower. The FCA requires a materially false statement or claim. Thus, Relator's allegations that KCP&L violated federal laws relating to "gratuities" and "bribes" are wholly insufficient. In order for such conduct to give rise to liability under the FCA, KCP&L must have *falsely represented compliance* with those laws in order to obtain payment from the GSA. The Complaint fails to allege any such false representation of compliance. Without this predicate false statement, the FCA has no application.

Second, KCP&L's alleged misrepresentation of the rates to be charged to the GSA cannot, as a matter of law, form the basis of a FCA claim. Under the Filed Rate Doctrine,

irrespective of any misrepresentation by KCP&L, the GSA was charged with constructive knowledge of the rates that would be charged. Missouri law is clear: no claim for fraud or misrepresentation can arise from a public utility's offer of rates contrary to the rates set by law. Likewise, the GSA's knowledge of the "actual" rates to be charged by KCP&L negates the falsity of KCP&L's alleged misrepresentation. Thus, Relator again fails to allege the existence of a fraudulent or false statement. This case should proceed no further.

## I.   Alleged Violations of Federal Law Do Not State a Claim Under the FCA

### A.  Relator Abandons "False Certification" Claims

As explained in KCP&L's opening brief (Dkt. 21), courts have applied the FCA where a contractor falsely certifies (expressly or impliedly) compliance with a law or contractual provision where compliance with that law or provision is a precondition to obtain payment from the government. *See e.g. U.S. ex rel. Wilkins v. United Health Group, Inc.,* 659 F.3d 295, 305 (3d Cir. 2011). KCP&L also explained that Relator fails to state a claim under such a "false certification" theory because he fails to identify any false certification of compliance made by KCP&L. *KCP&L Br.* 7-14 (Dkt. 21).

Relator makes no effort to rebut KCP&L's argument or to distinguish the controlling authorities it cited. Instead, Relator asserts that the statute does not "use the term 'certification,'" and that "no certification" is required for liability under the FCA. *Rel. Br.* 11, 16. Relator's newfound effort to distance himself from the "false certification" theory is curious in light of the allegations in his Complaint. Indeed, the core of Counts I and II of the Complaint purport to be based upon alleged "certifications" or "representations" of compliance with federal law. *See Complaint* (Dkt. 10), ¶ 53 ("KCP&L obtained the contract, in <u>contravention of express and/or implied warranties</u> to the contrary, by offering gratuities, gifts, and/or bribes to GSA personnel").

2

¶ 59 ("The representations related to <u>certification of compliance</u> with the gratuities clause and payments to officials clause rendered the claims false because KCP&L <u>certified</u> that it was and/or was legally required to be in compliance with the FAR regulations…"), ¶ 60 ("The express or implied <u>representations regarding compliance</u> with the FAR and applicable enabling statutes were material…"), ¶ 71 ("Defendant…submitted contractual <u>certifications</u> that were false…"), ¶ 72 ("Defendant made or used false records in that it <u>certified</u> that it had not made payments to government officials to influence the award of the contract…"), ¶ 74 ("The false records and false <u>certifications of compliance</u> were material…"), ¶ 75 (same); p. 14 ("THE EXPRESS <u>CERTIFICATIONS</u> REQUIRED") (emphasis added). Nevertheless, Relator now argues that "[n]o certification is required." *Rel. Br.* 16.

Though quibbling over the word "certification," Relator cannot dodge the dispositive principle that liability under the FCA is premised upon a false claim or statement. 31 U.S.C. § 3729(a)(1)(A-C). It is true that the FCA does not require a "certification." What it *does* require, however, is a materially false claim or statement. The principle of the "false certification" cases is simply this: a false statement of compliance with a law may give rise to liability under the FCA where compliance with the law is a precondition to receiving payment from the government. In other words, the "false certification" theory of liability could also be referred to as the "false statement of compliance" theory. FCA liability arises in such cases because there is a *materially false statement* (*i.e.* the false statement of compliance) made to the government. Whether this false statement is termed a "certification," "representation," "attestation," or "warranty" is irrelevant. What is relevant is the existence of a materially false statement, which Relator has failed to plead here.

B. <u>Relator Invents a New Theory of Liability Under the FCA</u>

3

Further distancing himself from his Complaint, Relator now argues that the

> issue is not whether KCP&L certified that it did or did not provide gratuities, but whether there is a sufficient nexus between the violations of federal statutes barring those gratuities and the decision by the federal government to award and pay under the contract for the tainted goods and services.

*Rel. Br.* 16. In other words, Relator alleges that, in order to state a claim under the FCA, he need only allege (a) a violation of a federal law that (b) has some "nexus" to the award of a contract or payment from the government.

Relator invents this theory of liability from whole cloth. Not only has it never been recognized by a court, it is also contrary to controlling precedent here. The law is clear in this circuit and elsewhere: the violation of a statute or regulation does not give rise to FCA liability. *U.S. ex rel. Vigil v. Nelnet, Inc.,* 639 F.3d 791, 795-96 (8th Cir. 2011) ("The FCA is not concerned with regulatory noncompliance. Rather, it serves a more specific function…"); *United States v. McNinch*, 356 U.S. 595, 599 (1958) (the FCA "was not designed to reach every kind of fraud practiced on the Government"); *Hammack v. Automated Info. Mgmt., Inc.,* 981 F. Supp. 993, 996 (N.D. Tex. 1997) ("Violations of laws, rules, or regulations alone do not create a cause of action under the Act"); *U. S. ex rel. Weinberger v. Equifax, Inc.,* 557 F.2d 456, 461 (5th Cir. 1977) (dismissing FCA claim because "the False Claims Act is not an enforcement device for the Anti-Pinkerton Act."); *U.S. ex rel. Graves v. ITT Educ. Services, Inc.,* 284 F. Supp. 2d 487, 495 (S.D. Tex. 2003) *aff'd,* 111 F. App'x 296 (5th Cir. 2004) ("The Supreme Court has cautioned that the False Claims Act was not designed to punish every type of fraud committed upon the government. "[T]he statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment'") (citations omitted); *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1265 (9th Cir. 1996) (same).

The FCA is not a "blunt instrument" used to enforce compliance with federal statutes and

regulations. *U.S. ex rel. Wilkins v. United Health Group, Inc.,* 659 F.3d 295, 305, 307 (3d Cir. 2011). To the contrary, the FCA only applies to false claims and statements. 31 U.S.C. § 3729(a)(1)(A-B). It is not the violation of a federal statute or regulation that triggers liability under the FCA, but rather, a subsequent false statement of compliance with that statute or regulation. In the absence of such a statement, there is no false statement implicating the FCA. *See U.S. ex rel. Vigil*, 639 F.3d at 795-96 ("Without sufficient allegations of materially false claims, an FCA complaint fails to state a claim on which relief may be granted"). A violation of federal law with some "nexus" to the government's decision to pay is not sufficient.

Relator cites a hodgepodge of cases from far-flung jurisdictions in a futile effort to support his newly invented theory of liability. Each of the cases cited by Relator, however, requires the very thing missing from Relator's Complaint: a materially false claim or statement.

In *U.S. ex rel. Compton v. Midwest Specialties, Inc.,* 142 F.3d 296, 298 (6th Cir. 1998), a government contract set out specific testing standards for brake shoes manufactured by the defendant for the Army. The contractor submitted claims to the government stating that the brake shoes "conformed to the contract[]." *Id*. at 298. In fact, however, the brake shoes had not been tested in accordance with the contractual requirements. *Id*. at 303. Thus, by falsely representing compliance with the contractual testing requirements, the claims for payment were false. *Id*.

Relator analogizes to *Compton* by asserting that "[p]aying gratuities renders a claim factually false in the same way that payment for brake shoes on jeeps that the government required to be tested for quality assurance is factually false where the required tests were not performed." *Rel. Br*. 16. But *Compton* provides no analogy. As explained above, the claims at issue in *Compton* were false because they *falsely represented compliance* with a contractual requirement. Relator can point to no such false statement by KCP&L. Instead, Relator alleges

5

that KCP&L provided "gratuities" and that federal law "very clearly prohibit[s] the offering or receipt of gratuities of any kind." *Rel. Br.* 16. But Relator cannot identify a single instance where KCP&L represented compliance with federal laws regarding "gratuities."

Similarly, in *U.S. ex rel. Oliver v. Parsons Co.,* 195 F.3d 457, 463 (9th Cir. 1999), a contractor allegedly submitted inflated claims for payment that did not comply with the applicable Cost Accounting Standards (CAS). Importantly, it was not the contractor's failure to comply with the CAS that implicated the FCA. *Id.* Instead, by failing to comply with the CAS, the claims submitted for payment were *factually false* because they *inaccurately calculated* the costs owed by the government. *Id.* Thus, contrary to Relator's assertion, liability did not turn on whether the contractor "complied with applicable accounting regulations…." *Rel. Br.* 16.

*New York v. Amgen Inc.,* 652 F.3d 103, 105 (1st Cir. 2011) *cert. dismissed,* 132 S. Ct. 993 (2011), involved a kickback scheme by a drug manufacturer. The court framed the issue as follows: "whether claims submitted to the seven state Medicaid programs *misrepresented compliance* with a precondition of payment recognized by those particular programs." *Id.* at 111 (emphasis added). Because the underlying state regulatory schemes required compliance with the Anti-Kickback Statute in order to obtain payment under the Medicaid programs, the court determined that the claims falsely "represented that transactions underlying the claims did not involve kickbacks prohibited by the federal Anti-Kickback Statute (AKS)." *Id.* In other words, because compliance with the AKS was a precondition for payment, by submitting claims for payment, the drug manufacturer was *impliedly certifying compliance* with the AKS.

Notably, the court rejected the argument that a violation of the AKS, in and of itself, caused the drug manufacturer's claims to be false or fraudulent. *Id.* at 111 (holding that it "stretch[es] too broadly" to conclude that "kickback schemes are fraudulent activities…and that

6

because of this the alleged kickbacks rendered the claims at issue false or fraudulent under the state FCA's"). Instead, the claims were false because of the implied certification contained therein. On the other hand, the court declined to find liability under the Georgia false claims act because there was no showing that failing to comply with the AKS "violate[d] a precondition of payment under [Georgia's] Medicaid program." *Id*. at 115.

Similarly, in *U.S. ex rel. Bidani v. Lewis*, 264 F. Supp. 2d 612, 614 (N.D. Ill. 2003), the court considered an FCA "claim premised on a theory of implied certification" in the context of an alleged kickback scheme. The *Bedani* court described the "implied certification" theory as follows: "a claim made in contravention of statutory or regulatory requirements may be deemed 'false' under the FCA in cases where the defendant's certification of compliance with the statutes and regulations in question is a condition of receiving funds from the Government." *Id*. at 614. The relevant question in *Bedani* was "whether compliance with the AKS was so important to the Medicare reimbursement process or so central to Medicare reimbursement agreements that compliance with the AKS was a condition of reimbursement so that failure to disclose non-compliance resulted in wrongful payments." *Id*. at 615. Like in *Amgen, Inc*., the court in *Bidani* found that, by submitting claims for payment under the Medicare program, the defendant was impliedly *certifying compliance* with Medicare's anti-kickback statute, because compliance with the AKS was "central" to obtaining reimbursements from the government. *Id*. at 616. *See also United States v. TDC Mgmt. Corp., Inc.,* 288 F.3d 421, 426 (D.C. Cir. 2002).

In sum, in each of the cases cited by Relator, FCA liability was predicated on the existence of a false claim or statement. In some cases, the false claim was an expressly false statement of compliance with a material law. *U.S. ex rel. Compton,* 142 F.3d 296. In others, it was the submission of a claim that falsely calculated funds owed by the government. *U.S. ex rel.*

7

*Oliver v. Parsons Co.,* 195 F.3d 457, 463 (9th Cir. 1999). And in still others, it was the submittal of claims for payment without disclosing a violation of a law or contractual provision that was a precondition for payment. *Amgen Inc.,* 652 F.3d 103; *U.S. ex rel. Bidani,* 264 F. Supp. 2d 612; *TDC Mgmt. Corp., Inc.,* 288 F.3d 421. None of the cases cited by Relator, however, suggest that a violation of federal law that has some "nexus" to the government's decision to award a contract creates liability under the FCA. To the contrary, a false claim or statement is required.

### C. Relator Does Not Allege a False Statement of Compliance

Unlike the cases he relies upon, Relator does not allege a false statement of compliance (express or implied) by KCP&L. The only express certification alleged by Relator is that contained in FAR § 52.203.11. However, as explained in KCP&L's opening brief, Relator has not alleged that KCP&L failed to comply with the requirements of FAR § 52.203.11. *KCP&L Br*. 11-12. Namely, Relator has failed to plead any facts suggesting that KCP&L used "Federally appropriated funds" to influence any member of the GSA. Thus, there is no allegation that the "certification" contained in FAR § 52.203.11 was false. *See U.S. ex rel. Lee*, 2004 WL 1638252.

There is no allegation that KCP&L expressly certified compliance with FAR 52.203.3, which simply provides that the contract "may" be terminated if the agency determines, after notice, hearing, and an opportunity for judicial review, that KCP&L provided gratuities to an employee of the government. Nor can such a certification be implied, because nothing contained in FAR 52.203.3 requires that "compliance" is a precondition to payment. *U.S. ex rel. Lee*, 2004 WL 1638252, *3 (implied certification claim "viable only when the underlying Federal statute or regulation provides that compliance is a condition or prerequisite to payment") (collecting cases). [1] In fact, the very language of the clause states that the government "may" terminate the

---

[1] In light of the plain language of FAR § 52.203.3, it's not clear that there is any provision with which "compliance" could be certified.

8

contract, and only after multiple procedural hurdles have been passed.[2] Notably, there is no allegation that GSA terminated the contract pursuant to the clause contained in FAR § 52.203.3.

Finally, Relator makes no allegation that, in submitting claims to GSA, KCP&L certified compliance with 18 U.S.C. 201(b) (prohibiting bribery of public officials) or 10 U.S.C. § 2306a (requiring that federal contractors submit certain "cost and pricing data before the award"). And, again, no such a certification can be implied, because neither statute (nor the contract) conditions payment on compliance with their terms. *See U.S. ex rel. Wilkins,* 659 F.3d at 305.

In sum, an alleged violation of federal laws governing "bribery" and "gratuities" does not state a claim for relief under the FCA. In the absence of a false statement of compliance with such laws, there is no predicate false claim giving rise to liability under the FCA. The FCA may not be "turn[ed] into a blunt instrument to enforce compliance with all...regulations rather than only those regulations that are a precondition to payment." *Id.* at 307 (citations omitted).

**II.     Relator Does Not Allege Fraudulent Inducement of the Contract**

Relator also invokes the "fraudulent inducement" theory of FCA liability, citing to a line of cases holding that "[w]hen a contract is initially obtained through *fraud or deception*, every claim for payment submitted pursuant to that contract is thereby tainted and triggers FCA liability regardless of whether the claim is itself 'false or fraudulent.'" *Rel. Br.* 16 (citing *U.S. ex rel. Bettis v. Odebrecht Contractors of California, Inc.,* 297 F. Supp. 2d 272, 274 (D.D.C. 2004)) (emphasis added). Also referred to as the "promissory fraud" theory, courts have noted that its application is "rare." *U.S. ex rel. Hopper,* 91 F.3d at 1267. In any event, just like every other theory of liability under the FCA, the "fraudulent inducement" theory is contingent upon the existence of a "false statement or fraudulent course of conduct." *U.S. ex rel. Wilson v. Kellogg*

---

[2] Relator continues to emphasize subpart (d) of FAR 52.203.3, but it's unclear what meaning Relator attaches to this language that he believes aids his argument. Nothing in subpart (d) suggests that KCP&L was required to "comply" with FAR 52.203.3 in order to obtain payment.

9

*Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). *See also U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006) (theory only applies where "when the contract…was originally obtained through *false statements or fraudulent conduct*") (emphasis added); *U.S. ex rel. Graves,* 284 F. Supp. 2d at 503. Here, Relator pled no "false statement" or "fraudulent conduct" that induced the GSA to contract.

A. Alleged "Bribes" and "Gratuities" Are Not False Statements or Fraudulent Conduct

Relator tries to equate alleged impermissible "bribes" and "gratuities" with fraudulent statements inducing a contract. For example, Relator argues that "the very formation of the contract at issue was tainted by KCP&L's behavior," because "the defendant[] and the complicit federal employees jointly engaged in conduct that tainted the entire contracting process." *Rel Br*. 16-17. As described above, however, a violation of a federal statute or regulation does not, in and of itself, constitute "fraudulent conduct." Fraud, by definition, requires a "misrepresentation" or false statement. Black's Law Dictionary 8th ed. (2004) (fraud is a "knowing *misrepresentation* of the truth or concealment of a material fact") (emphasis added). *See also Latta v. Robinson Erection Co.*, 248 S.W.2d 569, 576 (Mo. 1952) ("misrepresentation" is a required element of fraud). Allegedly violating federal law by providing an impermissible "gratuity" is not a "misrepresentation;" it encompasses no falsity. Both cases cited by Relator confirm that the "fraudulent inducement" theory of liability is premised on the existence of a false statement. *See U.S. ex rel. Bettis v. Odebrecht Contractors of California, Inc.,* 297 F. Supp. 2d at 279, 283 (declining to apply a "legally-flawed application of the fraud-in-the-inducement theory"); *Miller v. Holzmann*, 563 F. Supp. 2d 54, 136 (D.D.C. 2008) (FCA claim based upon a false, inflated bid to procure a contract). In short, allegations that KCP&L provided impermissible "gratuities" to GSA employees do not state an FCA claim under the fraudulent inducement theory.

10

### B. Allegedly "Promised" Rates Do Not Constitute Fraudulent Statements

Likewise, KCP&L's alleged "promise" of rates lower than those ultimately charged to the GSA cannot, as a matter of law, constitute a false or fraudulent inducement of the contract. As explained in KCP&L's opening brief, under the Filed Rate Doctrine, the GSA is "conclusively presume[d]" to have known the rates that could be lawfully charged by KCP&L. *Bauer v. Southwestern Bell Tel. Co.,* 958 S.W.2d 568, 570 (Mo. App. E.D. 1997) (holding that plaintiff is "charged with constructive notice of the filed tariff. Similar to laws, all Missouri citizens are presumed to know the filed tariffs…"). Even an "intentional misquotation" of rates by KCP&L cannot constitute a fraudulent statement. *Id*.

"Because FCA liability requires an element of fraud or falsity, courts have disallowed FCA claims where the Government knew, or was in possession at the time of the claim, of the facts that make the claim false." *Boisjoly v. Morton Thiokol, Inc.,* 706 F. Supp. 795, 809 (D. Utah 1988). In other words, government knowledge of an alleged falsity precludes a finding of falsity. *Id*. Thus, "if the complaint itself alleges that the government knew of th[e] very facts or characteristics which allegedly make the claim false, no claim has been stated." *Id*. at 810. *See also U.S. ex rel. Costner v. United States,* 317 F.3d 883, 887 (8th Cir. 2003) ("[I]f the government knows and approves of the particulars of a claim for payment before that claim is presented, the presenter cannot be said to have knowingly presented a fraudulent or false claim") (citations and quotations omitted); *U.S. ex rel. Durcholz v. FKW Inc.,* 189 F.3d 542, 544-45 (7th Cir. 1999) ("The government's prior knowledge of an allegedly false claim can vitiate a FCA action"). Here, not only did the GSA have constructive knowledge of the rates to be charged by KCP&L, but Relator alleges that the GSA was expressly informed of these rates prior to execution of the contract. *Complaint* ¶¶ 27, 32. Simply put, Relator has failed to plead a false or

11

fraudulent claim or statement, because, as a matter of law, the GSA had knowledge of the alleged falsity at the time the relevant representations were made.[3]

Relator asserts that, "in order to prevail in a case brought under the FCA the relator must plead and prove the elements set out in the [FCA], but it does not have to prove fraud." *Rel. Br.* 5. Likewise, Relator asserts that he need not plead "reliance" or "intent," because the FCA "does not deal with rates, but rather, *with material false statements*." *Rel. Br.* 6 (emphasis added). Importantly, Relator concedes the relevant point: he must allege a "materially false statement" in order to plead a "prima facie case under the FCA." *Rel. Br.* 6. Here, he has failed to do so. An alleged misrepresentation by KCP&L regarding electricity rates cannot, as a matter of law, constitute a "fraudulent" statement and the government's knowledge of the allegedly "false" rates "negates" a finding of falsity. *U.S. ex rel. Durcholz,* 189 F.3d at 545. Thus, Relator's Complaint does not state a prima facie case under the FCA.

Relator argues that federal law "preempts" the Filed Rate Doctrine. *Rel. Br.* 4. His lone supporting citation is FAR § 41.201, which he claims "suggests" preemption. *Rel. Br.* 4. Apparently, Relator contends that energy rates set by state law (*i.e.* the Filed Rate) do not apply to federal agencies. Notably, this argument is expressly contrary to Relator's Complaint, which alleges that the rates charged to the GSA were subject to the "rules and regulations" of the Missouri Public Service Commission ("PSC"). *Complaint* ¶¶ 27, 32. Regardless, the FARs are clear that federal agencies are bound by the electricity rates set by state regulatory agencies:

<u>if a regulatory body approves a rate change, any rate change shall be made a part of the contract by unilateral contract modification or otherwise documented in accordance</u>

---

[3] Relator asserts that "the government cannot be estopped on the same grounds as private litigants." *Rel. Br.* 8. Notably, in the case cited by Relator, the Supreme Court left open the question of whether estoppel "may not in any circumstances rune against the Government." *Heckler v. Community Health Serv. of Crawford County, Inc.*, 467 U.S. 51, 60 (1984). In any event, estoppel has no relevance here, as KCP&L does not argue that the GSA is "estopped" from recovering property as the result of KCP&L's reliance on representations made by the GSA. *See id.* at 59 (*citing* Restatement (Second) of Torts § 894 (1979)).

12

> with agency procedures. <u>The approved applicable rate shall be effective on the date determined by the regulatory body and resulting rates and charges shall be paid promptly to avoid late payment provisions.</u> Copies of the modification containing the approved rate change shall be sent to the agency's paying office or office responsible for verifying billed amounts (see 41.401).

FAR § 41.402(c) (emphasis added). The PSC's rates are not "preempted" by federal law.

Likewise, in an effort to delay the demise of his claims until sometime after the pleading stage, Relator argues that the Filed Rate Doctrine is an "affirmative defense" that was not "established on the face of the complaint." *Rel. Br.* 4. As an initial matter, it's not clear that the Filed Rate Doctrine qualifies as an affirmative defense, because its application does not depend on any evidentiary showing by KCP&L. *See Deer v. Cherokee County, Iowa*, 183 F.R.D. 642 (N.D. Iowa 1999) ("reasoning that if the defendant bears the burden of proof on the defense, it is an affirmative defense"). Regardless, however, the Filed Rate Doctrine can be applied "from the face of the complaint." *Rel Br*. 4. Relator's complaint alleges that KCP&L misrepresented the rates to be charged to the GSA. Assuming this allegation as true, under the Filed Rate Doctrine (a principle of law), Relator's allegation cannot provide a basis for an FCA claim. No facts or evidence need be presented. *See Boisjoly,* 706 F. Supp. at 809.

Finally, Relator argues that, if the Filed Rate Doctrine applies, it should merely serve as a defense to "one measure of damage," *i.e*. the "difference between the rate promised and the rate actually charged." *Rel. Br*. 8-9. Relator argues that the remaining "damages flow from the false statements and not from the actual tariffed rate." *Rel. Br*. 8. Again, Relator misses the point. The Filed Rate Doctrine "negates" the alleged falsity of the statements made by KCP&L. Thus, it "negates" a required element of an FCA claim, and Relator is not entitled to any damages.

## Conclusion

KCP&L respectfully requests that the Court dismiss Relator's claims with prejudice.

13

Case 4:11-cv-00590-FJG   Document 35   Filed 07/02/12   Page 18 of 19

Respectfully submitted,

**GRAVES BARTLE MARCUS & GARRETT LLC**

/s/Todd P. Graves
Todd P. Graves, Mo. Bar No. 41319
Edward D. Greim, Mo. Bar No. 54034
Clayton J. Callen, Mo. Bar No. 59885
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Telephone: (816) 256-4144
Facsimile: (816) 817-0863
*Counsel for Defendant KCP&L*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing instrument to which this certificate is attached was filed by ECF on July 2, 2012, effecting service on:

Edward D. Robertson, Jr.
Anthony L. DeWitt
BARTIMUS, FRICKLETON,
 ROBERTSON & GORNY, P.C.
715 Swifts Highway
Jefferson City, MO 65109
aldewitt@sprintmail.com
chiprob@earthlink.net

Jeffrey J. Carey
CAREY LAW FIRM, LLC
229 SE Douglas St., Suite 210
Lee's Summit, MO 64063
carey@carey-lawfirm.com
*Counsel for Relator*

Thomas M. Larson
United States Attorney
400 E 9th Street, Suite 5510
Kansas City, MO 64105
(816)426-3130
Fax: (816) 426-3165
tom.larson@usdoj.gov

In addition, a true and correct copy of the foregoing instrument was served via electronic email on July 2, 2012 to the following:

Jenelle M. Beavers
United States Department of Justice
Civil Division
950 Pennsylvania Avenue, NW
Washington D.C. 20530
Jenelle.Beavers@usdoj.gov

/s/Todd P. Graves
Todd P. Graves
*Counsel for Defendant KCP&L*

14