**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES ex rel. JAMES KRAXBERGER )<br>)<br>Relator/Qui Tam Plaintiff, )<br>)<br>v. )<br>)<br>KANSAS CITY POWER & LIGHT CO., )<br>)<br>Defendant. )<br>) | Case No. 4:11-cv-0590-FJG |

## ORDER

Currently pending before the Court is Defendant Kansas City Power and Light Company's ("KCP&L") Motion to Strike Plaintiff's Amended Complaint (Doc. No. 22).

### I. BACKGROUND

On June 9, 2011, Relator and *Qui Tam* Plaintiff James Kraxberger ("Relator") filed a Complaint against KCP&L for claims arising under the Federal False Claims Act, 31 U.S.C. § 3729. On April 19, 2012, Relator filed an Amended Complaint. The Amended Complaint alleges that the landlord for the civilian federal government, Public Buildings Service ("PBS") of the Government Services Administration ("GSA"), oversaw operations to convert or replace the electrical system located in the Richard Bolling Federal Building ("RBF") in Kansas City, Missouri. Plaintiff alleges GSA, who for many years utilized Trigen-Kansas City Energy Corporation ("Trigen") to supply the electricity for its buildings, was persuaded through illegal gratuities to hire Defendant KCP&L for the job – to the detriment of GSA. Specifically, Relator alleges (1) Defendant charged GSA a higher rate for electrical service than it had initially promised; (2) Defendant

obtained the contract to convert RBF to an all-electric building by offering gratuities in the form of gifts and bribes to GSA personnel; (3) Defendant made or used false records to certify that it had not provided gratuities, bribes or payments to GSA; and (4) Defendant conspired with GSA and KCP&L subcontractors to secure the conversion project. (Doc. No. 1 & 10).

Relator seeks judgment against the Defendants in the amount of three times the damages sustained by the United States Government on each claim, a civil penalty against the Defendants each jointly and severally in an amount between $5,500.00 and $11,000.00 for each violation of 31 U.S.C. § 3729, *et seq.*, the maximum amount allowed to the *Qui Tam* Plaintiff under 31 U.S.C. § 3730(d) of the False Claims Act or any other applicable provision of law (including any alternate remedies), court costs and reasonable attorneys fees at prevailing rates, expenses, and such other and further relief as this Court deems just and proper. (Doc. No. 10)

On May 15, 2012, Defendant filed the present Motion to Strike Amended Complaint (Doc. No. 22). Defendant seeks to strike paragraph 28, argument heading on page 9, footnote 2, and paragraph 25 of the Amended Complaint (Doc. No. 10, 22, 23, & 32). Plaintiff opposes the Motion (Doc. No. 28).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(f) states, "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). The district court enjoys liberal discretion in ruling on a motion to strike. Stanbury Law Firm v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000). However, striking a party's pleadings is an extreme and disfavored measure. Lunsford v. United

2

Case 4:11-cv-00590-FJG   Document 41   Filed 09/10/12   Page 2 of 8

States, 570 F.2d 221, 229 (8th Cir.1977). "There is general judicial agreement that [a motion to strike] should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy.'" N. Face Apparel Corp. v. Williams Pharmacy, Inc., 4:09CV2029RWS, 2010 WL 546928, at *1 (E.D. Mo. Feb. 9, 2010). Matters that are not strictly relevant to the principle claim should not necessarily be stricken if they provide "important context and background" to claims asserted. Stanbury Law Firm, 221 F.3d at 1063. Moreover, "even when technically appropriate and well-founded, Rule 12(f) motions are not granted in the absence of a showing of prejudice to the moving party.'" Am. Home Assur. Co. v. Pope, 02-4057-CV-C- SOW, 2005 WL 1312975, at *1 (W.D. Mo. June 1, 2005). If there is any doubt whether the matter may raise an issue, the motion to strike should be denied. Gilbee v. RJW Transp., Inc., 1:10-CV-0060-SNLJ, 2010 WL 4974863, at *2 (E.D. Mo. Nov. 24, 2010).

Motions to strike are rarely granted. Stanbury Law Firm, 221 F.3d at 1062. Nonetheless, "a motion to strike should be granted when doing so will make trial of the action less complicated or otherwise streamline the ultimate resolution of the action." General Casualty Insur. Co. of Wisconsin v. Penn-Co Construction, Inc., No. C03-2031-MWB, 2005 WL 1843462, at *2 (N.D.Iowa July 29, 2005).

### III. DISCUSSION

#### A. PARAGRAPH 28

Paragraph 28 of the Amended Complaint reads:

At that time, just as presently, the Federal Government was pushing green buildings and trying to be more environmentally friendly. The GSA always used the FAR try to promote local business in the area. Yet the coal that Trigen burns is from local sources and KCP&L burns coal from the east coast. Trigen proved to the GSA that KCP&L would be burning more coal and causing much greater

3

> air pollution by going to electrode boilers over municipal steam. Yet at the end of the negotiations all these factors were ignored by GSA as it moved forward with the expanded KCP&L plan.

(Doc. No. 10).

In paragraph 28, Plaintiff alleges that GSA's policy promoting local business and environmentally friendly buildings was ignored by GSA when it moved forward with the expanded KCP&L plan (Doc. No. 10). Plaintiff states these allegations are relevant because they show factors GSA should have considered and illustrate the influence KCP&L's alleged gratuities to GSA had on contracting decisions (Doc. No. 28). Defendant argues the allegations in paragraph 28 concerning the source of coal and its effect on the environment are irrelevant to Plaintiff's claims and are highly prejudicial (Doc. No. 22, 23 & 32).

According to the Eighth Circuit, matters that provide background and context should not necessarily be stricken. Stanbury Law Firm, 221 F.3d at 1063. In this case, GSA policies and regulations which were in effect provide background and context for Plaintiff's allegation that gratuities influenced the decision of GSA employees to enter a contract and make payments GSA otherwise would not have. As such, the Court **DENIES** Defendant's request to strike paragraph 28 of Plaintiff's Amended Complaint.

### B. HEADING "MONEY, GOLF, AND BASEBALL TICKETS"

The heading on page 9 of the Amended Complaint reads "Money, Golf, and Baseball Tickets". Plaintiff uses the heading to introduce its discussion of the gratuities and economic incentives KCP&L provided to GSA personnel. Plaintiff states KCP&L gave items of monetary value to individuals in an attempt to influence them to act on KCP&L's behalf. Plaintiff lists specific items, including four Crown tickets to the Royals

4

game valued at $170 per ticket, several additional Royals tickets at an unspecified price which included private restrooms and complimentary food and drinks, suite tickets to the Chief's game, and attendance at a golf event including free green fees, carts, and door prizes.  Plaintiff also states, in its Amended Complaint, that employees responsible for making contractor recommendations were given thousands of dollars in what amounts to bribes, or at the very least, improper inducements, in order to gain support for the electric conversion.  (Doc. No. 10).

Defendant requests the Court strike the word, "Money" from the Amended Complaint (Doc. No. 22, 23 & 32).  Defendant states Plaintiff's Amended Complaint asserts no allegations KCP&L offered any money to a GSA official.  As such, the inclusion of "Money" in the heading is improper (Doc. No. 22, 23 & 32).  Plaintiff states the word "Money" properly belongs in the heading because it is both relevant and material (Doc. No. 28).  Plaintiff notes tickets to sporting events and door prizes cost money, which would be of no consequence to Defendant as Defendant stood to profit an extra $80,000 per month from its activity (Doc. No. 28).

Although Defendant is correct that Plaintiff does not allege money exchanged hands between KCP&L and GSA employees, Plaintiff's allegation GSA employees received thousands of dollars in bribes appears to make money relevant.  As such, the Court cannot conclude that money has no bearing on the subject matter of this litigation.  If the court has any doubt about whether the matter may raise a potential issue, the motion to strike should be denied.  <u>Gilbee</u>, 2010 WL 4974863, at *2.  Accordingly, the Court **DENIES** Defendant's request to strike the heading, "Money, Golf, and Baseball Tickets" from Plaintiff's Amended Complaint.

5

Case 4:11-cv-00590-FJG   Document 41   Filed 09/10/12   Page 5 of 8

### C. FOOTNOTE 2

Footnote 2 of the Amended Complaint reads:

"The use of electric resistance and/or electric boilers as the primary heating source for the building is prohibited." Facilities Standards for the Public Building Service, PBS-100, Sec. 5.10, p. 141 (Mar. 2005). This is because as they are inefficient, and dangerous. They create steam that is under higher pressure and create the potential for vapor-phase explosions that can be catastrophic.

(Doc. No. 10)

In footnote 2, Plaintiff alleges the building standards promulgated by GSA prohibited GSA from using electrode boilers in government buildings because electrode boilers are inefficient and dangerous (Doc. No. 10). Plaintiff argues these allegations are relevant to the issues of Defendant's knowledge, intent, and impact of gratuities on the contracting and approval process because GSA employees willingly overlooked a known risk in exchange for Defendant's gratuities (Doc. No. 28). Defendant argues the allegations in footnote 2 are irrelevant and immaterial (Doc. No. 22, 23 & 32)

The Eighth Circuit has held that matters which provide context and background should not necessarily be stricken. Stanbury Law Firm, 221 F.3d at 1063. Here, Plaintiff provides information from GSA's regulations that electrode boilers were known to be dangerous and inefficient and should have received more study. Plaintiff alleges that the reason GSA did not study the boilers and went against its own safety regulations to install the boilers was because of the gratuities provided by KCP&L. This provides context and background. Accordingly, the Court **DENIES** Defendant's request to strike footnote 2 of Plaintiff's Amended Complaint.

### D. PARAGRAPH 25

Paragraph 25 of the Amended Complaint reads:

Electrode boilers also bring with them safety issues for the over three thousand government tenants in the GSA run buildings. The boilers proposed created superheated steam. While most boilers only heat water to its boiling point, superheated boilers will boil water and then further heat the steam beyond its boiling point. Any leak of superheated steam would cause serious harm to people in the area. A failure in the system, furthermore, could cause a catastrophic explosion.

(Doc. No. 10).

In paragraph 25, Plaintiff alleges the electrode boilers proposed by KCP&L's conversion project created safety issues for thousands of GSA employees (Doc. No. 10). Defendant argues the allegations are irrelevant and immaterial to Plaintiff's claim regarding false claim for payment (Doc. No. 22, 23 & 32). Plaintiff states paragraph 25 is relevant as it shows GSA employees overlooked a known risk in exchange for KCP&L gratuities (Doc. No. 28).

The Eighth Circuit has held that matters which provide context and background should not necessarily be stricken. Stanbury Law Firm, 221 F.3d at 1063. Here, Plaintiff provides information that the electrode boilers GSA chose from KCP&L are dangerous and put many government tenants at risk. Plaintiff alleges the reason GSA compromised safety was because of the gratuities provided by KCP&L. This provides context and background to Plaintiff's false claim for payment allegations. As such, the Court **DENIES** Defendant's request to strike paragraph 25 of Plaintiff's Amended Complaint.

## IV. CONCLUSION

Accordingly, Defendant Kansas City Power and Light Company's ("KCP&L") Motion to Strike Plaintiff's Amended Complaint (Doc. No. 22) is hereby **DENIED**.

**IT IS SO ORDERED.**

Date: September 10, 2012  **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri  Fernando J. Gaitan, Jr.
 Chief United States District Judge