# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| **UNITED STATES ex rel. JAMES KRAXBERGER** | ) ) ) | |
| Relator/Qui Tam Plaintiff, | ) ) | 11-CV-0590-W-FJG |
| vs. | ) ) | |
| **KANSAS CITY POWER & LIGHT CO.**, | ) ) | |
| Defendant. | ) ) | |

## ANSWER OF DEFENDANT KANSAS CITY POWER & LIGHT COMPANY

Defendant Kansas City Power & Light Company ("KCP&L"), for its Answer to the First Amended Complaint of Relator James Kraxberger ("Kraxberger"), states and alleges as follows:

1. Paragraph 1 states a conclusion of law to which no response is required, and KCP&L therefore denies the same.

2. Paragraph 2 states a conclusion of law to which no response is required, and KCP&L therefore denies the same.

3. Defendant KCP&L admits the allegations in Paragraph 3.

4. Paragraph 4 states a conclusion of law to which no response is required, and KCP&L therefore denies the same.

5. KCP&L admits upon information and belief that Relator is a citizen and resident of Jackson County, Missouri, who worked for a General Services Administration ("GSA") contractor or subcontractor in varying capacities, but as of April 2012, was not a government employee. All other or contrary allegations in Paragraph 5 are denied.

1

6. KCP&L denies Paragraph 6. Further answering, KCP&L states that much of Relator's Complaint is based on public information, information for which Relator is at best a third-hand source, or Relator's own speculation.

7. KCP&L admits that the information in Paragraph 7 was correct as of June 3, 2011, although its officers have changed.

8. KCP&L admits upon information and belief that a mission of the Public Buildings Service ("PBS") of the GSA is to provide superior workplaces for federal customer agencies at good economies to the American taxpayer. KCP&L denies all other or contrary allegations in Paragraph 8.

9. Upon information and belief, KCP&L admits that the information and data contained in Paragraph 9 was correct as of June 2011. Further answering, KCP&L states that the GSA purchases energy services at hundreds of federal properties in hundreds of markets and is an able and experienced buyer of energy services.

10. KCP&L admits that among the properties managed by GSA is the Richard Bolling Federal Building in Kansas City (the "Bolling Building"). KCP&L denies all other or contrary allegations in Paragraph 10.

11. KCP&L admits that for some time, the Bolling Building was supplied by steam for heating purposes. KCP&L denies all other or contrary allegations in Paragraph 11.

12. Upon information and belief, KCP&L admits that the corporate successor to Trigen-Kansas City Energy Corporation ("Trigen") operates a boiler across the Missouri River from downtown Kansas City, Missouri, and that this boiler relies exclusively on coal for fuel. KCP&L denies all other or contrary allegations in Paragraph 12.

13. KCP&L lacks sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 13, and therefore denies the same.

14. KCP&L admits that for many years Trigen steam was piped underground to buildings in downtown Kansas City, Missouri, for hearing purposes. KCP&L denies all other or contrary allegations in Paragraph 14.

15. KCP&L admits that Trigen has sold its recycled heating steam to some buildings in downtown Kansas City. KCP&L denies all other or contrary allegations in Paragraph 15.

16. KCP&L admits that Trigen has supplied chilled water to GSA to attempt to cool some buildings in downtown Kansas City. KCP&L denies all other or contrary allegations in Paragraph 16.

17. KCP&L admits that in 2005 it was approached by GSA to explore the cost of updating the chiller plant in the Bolling Building. KCP&L denies all other or contrary allegations in Paragraph 17, and specifically denies that John Strickert, who was an intern, was "in charge of utilities at the building" or "was instrumental in the initiation of the exploration."

18. KCP&L admits that GSA believed it could generate chilled water at a lower cost than it was paying Trigen. KCP&L denies all other or contrary allegations in Paragraph 18.

19. KCP&L admits that GSA asked for an estimate for updated chillers. KCP&L denies all other or contrary allegations in Paragraph 19.

20. KCP&L admits that it provided GSA with studies showing the cost of several discrete options for heating and cooling improvements at the Bolling Building. KCP&L denies all other or contrary allegations in Paragraph 20.

21. KCP&L denies all allegations in Paragraph 21.

3

22.     KCP&L admits that the studies it provided GSA included one alternative that was an all-electric building, which would include electrode boilers for steam heat and new, more efficient chillers for cooling.  Future energy cost projections under the all-electric alternative were provided showing the cost under both a regular rate and an all-electric rate, which under the tariffs then in effect, was lower than the regular rate that would otherwise have applied.  KCP&L denies all other or contrary allegations in Paragraph 22 and its associated footnote.

23.     KCP&L admits that GSA decided that applicable federal building standards did not prohibit the use of electrode boilers.  All other or contrary allegations in Paragraph 23 or its associated footnote (including Relator's legal argument about the meaning of federal regulations) are denied.

24.     KCP&L admits upon information and belief that Trigen attempted to argue that the federal regulations referenced in Paragraph 23 prohibited the use of electrode boilers.  Further answering, KCP&L states that GSA reviewed and considered many arguments and facts provided by Trigen in an attempt to keep GSA from discontinuing any part of Trigen's service.  All other or contrary allegations in Paragraph 24 are denied.

25.     KCP&L admits that the electrode boilers boil water and produce steam.  KCP&L denies all other or contrary allegations in Paragraph 25.

26.     KCP&L admits that the lower cost of energy under the all-electric rate, the terms and availability of which were set forth in a publicly-filed tariff that had been approved by the Missouri Public Service Commission ("MPSC"), was an important factor both in KCP&L's studies for GSA and in GSA's decision to install electrode boilers.  All other or contrary allegations in Paragraph 26 are denied.

4

27. KCP&L admits that Trigen argued to GSA in October 2006, during a time when, under the MPSC's approved tariff, the all-electric rate would have been available to the Bolling Building had the building's conversion been completed, that Trigen doubted that a special rate could be offered for the building. KCP&L further admits that Trigen stated to GSA that KCP&L was a public utility regulated by the MPSC, and that KCP&L could not make a rate available to the Bolling Building that it was not also making available to similarly-situated customers. All other or contrary allegations in Paragraph 27 are denied.

28. KCP&L denies all allegations in Paragraph 28.

29. KCP&L denies all allegations in Paragraph 29.

30. KCP&L admits that in part because of its conversion to an all-electric building, GSA replaced gas-utilizing kitchen equipment with electric kitchen equipment. KCP&L denies all other or contrary allegations in Paragraph 30.

31. KCP&L has no information about what Relator believed at any given time, and so denies all allegations in Paragraph 31.

32. KCP&L admits that after the MPSC restricted the availability of the all-electric rate to customers who were already using the rate on December 31, 2007, and after the MPSC rejected requests to except the Bolling Building from this decision, the MPSC's new all-electric tariff did not allow the Bolling Building to receive service under the all-electric rate. KCP&L further admits that before the MPSC's decision, the Bolling Building would have qualified for the all-electric rate upon the completion of the conversion. Finally, KCP&L admits that Trigen's arguments to GSA in October 2006 provided a reminder to GSA (in addition to KCP&L's contracts with GSA and KCP&L's provision of MPSC rate decisions to GSA) that KCP&L's

ability to charge any particular rate to a customer depended upon the decisions of the MPSC. KCP&L denies all other or contrary allegations in Paragraph 32.

33. KCP&L denies the allegations in Paragraph 33.

34. KCP&L denies the allegations in Paragraph 34.

35. KCP&L denies the allegations in Paragraph 35.

36. KCP&L denies the allegations in Paragraph 36.

37. KCP&L denies the allegations in Paragraph 37.

38. KCP&L denies all allegations in Paragraph 38, and without limitation of the foregoing, specifically denies that any sport ticket, beverage, or food item was given to Castronuovo (who had no share of authority to make a decision on whether to adopt the all-electric conversion plan), Strickert (who was merely an intern and who left the Bolling Building before 2006), or any other GSA intern or worker with the intent to influence, the ability to influence, or the effect of influencing GSA to take any act on KCP&L's behalf.

39. KCP&L denies the allegations in Paragraph 39.

40. KCP&L denies the allegations in Paragraph 40. Further answering, KCP&L states that Castronuovo and Strickert had no decision-making authority with respect to the conversion or the decision to install boilers.

41. KCP&L denies the allegations in Paragraph 41.

42. To the extent Relator makes arguments about the requirements of federal law, no response is required and the allegations are therefore denied. KCP&L denies all other allegations in Paragraph 42.

43. KCP&L lacks sufficient information to form a belief as to the truth or falsity of the allegations regarding Relator's arguments with GSA, and therefore denies the same. To the

extent Relator makes arguments about the requirements of federal law, no response is required and the allegations are therefore denied. All remaining allegations in Paragraph 43 are denied.

44. KCP&L denies the allegations in Paragraph 44.

45. KCP&L lacks sufficient information to form a belief about what Relator knows or believes, and therefore denies all allegations regarding the same. KCP&L admits that the total cost of the conversion was approximately $6 million, that it used contractors and subcontractors for the conversion, including Design Mechanical, Inc., and that the selection of contractors was approved by GSA. All other or contrary allegations are denied.

46. KCP&L denies the allegations in Paragraph 46.

47. To the extent Relator makes arguments about the requirements of federal law, no response is required and the allegations are therefore denied. All other allegations in Paragraph 47 are denied.

48. KCP&L denies the allegations in Paragraph 48.

49. KCP&L admits that FAR 52.203.3 is incorporated into its Area-Wide Contract with GSA. KCP&L denies all other or contrary allegations in Paragraph 49.

50. KCP&L admits that FAR 52.203.11, which Relator has not fully quoted in Paragraph 50, is contained on a certification form that KCP&L completed in connection with its Area-Wide Contract with GSA. KCP&L denies all other or contrary allegations in Paragraph 50.

## COUNT I

51. KCP&L incorporates by reference its answers to Paragraphs 1-50 as though fully set forth herein.

52. KCP&L denies the allegations in Paragraph 52.

53. KCP&L denies the allegations in Paragraph 53.

7

54. KCP&L denies the allegations in Paragraph 54.

55. KCP&L denies the allegations in Paragraph 55.

56. KCP&L denies the allegations in Paragraph 56.

57. KCP&L denies the allegations in Paragraph 57.

58. KCP&L denies the allegations in Paragraph 58.

59. KCP&L denies the allegations in Paragraph 59.

60. KCP&L denies the allegations in Paragraph 60.

61. KCP&L denies the allegations in Paragraph 61.

62. KCP&L denies the allegations in Paragraph 62.

63. KCP&L denies the allegations in Paragraph 63.

64. KCP&L denies the allegations in Paragraph 64.

65. KCP&L denies the allegations in Paragraph 65.

66. KCP&L denies the allegations in Paragraph 66.

67. KCP&L denies the allegations in Paragraph 67.

68. KCP&L denies the allegations in Paragraph 68.

WHEREFORE, KCP&L demands judgment in its favor and against Relator, for costs, expenses, and attorneys' fees, and for such other and further relief as is just and proper.

## COUNT II

69. KCP&L incorporates by reference its answers to Paragraphs 1-68 as though fully set forth herein.

70. KCP&L denies the allegations in Paragraph 70.

71. KCP&L denies the allegations in Paragraph 71.

72. KCP&L denies the allegations in Paragraph 72.

73. KCP&L denies the allegations in Paragraph 73.

74. KCP&L denies the allegations in Paragraph 74.

75. KCP&L denies the allegations in Paragraph 75.

76. KCP&L denies the allegations in Paragraph 76.

77. KCP&L denies the allegations in Paragraph 77.

WHEREFORE, KCP&L demands judgment in its favor and against Relator, for costs, expenses, and attorneys' fees, and for such other and further relief as is just and proper.

## COUNT III

78. KCP&L incorporates by reference its answers to Paragraphs 1-77 as though fully set forth herein

79. KCP&L denies the allegations in Paragraph 79.

80. KCP&L denies the allegations in Paragraph 80.

81. KCP&L denies the allegations in Paragraph 81.

82. KCP&L denies the allegations in Paragraph 82.

83. KCP&L denies the allegations in Paragraph 83.

WHEREFORE, KCP&L demands judgment in its favor and against Relator, for costs, expenses, and attorneys' fees, and for such other and further relief as is just and proper.

## DEFENSES

1. Relator fails to state a claim upon which relief can be granted with regard to rates, in that:

    a. Relator affirmatively pleads that GSA had knowledge that its rates had to be approved by the MPSC and were not unilaterally set by KCP&L; therefore, any projection, quote, or guarantee of future rates by KCP&L could not have

been knowingly false or could not have constituted a fraudulent statement for purposes of the False Claims Act; and

b. GSA actually did have knowledge that any rate it received from KCP&L would have to be approved by the MPSC and could not be unilaterally set by KCP&L; and

c. The Area-Wide Contract between KCP&L and GSA, and each amendment executed thereto during the course of GSA's investigation of and payment for the conversion project, expressly stated that KCP&L could charge GSA only those rates approved by the MPSC; and

d. The Filed Rate Doctrine precludes any customer of a public utility, including GSA, from relying on a promise of any rate not approved by the MPSC and issued in a public tariff.

2. Relator fails to state a claim upon which relief can be granted with respect to gratuities, in that Relator fails to plead or cannot show that:

a. KCP&L used federal appropriated funds for making payments to any GSA official; or

b. KCP&L gave a gratuity to any GSA official with any decision-making authority with respect to the conversion project or the decision to use electrode boilers; or

c. KCP&L's certification that it would file disclosure forms was knowingly false when made and was a precondition to its receiving payment for services in connection with the conversion project, rather than a precondition for participating in the Area-Wide Contract; or

d.  KCP&L was found by GSA to have given a gratuity to influence the award of a contract after notice and hearing, and the Area-Wide Contract was terminated, but KCP&L nonetheless submitted requests for payment.

3.  Relator fails to state a claim upon which relief can be granted with respect to disclosure of information regarding future rates, in that Relator fails to plead and cannot demonstrate that KCP&L:

a.   gave Relator any false information about future rates; or

b.  had in its possession any particular fact regarding future rate increases, that it failed to disclose that fact to GSA to correct a previous misstatement, and that GSA did not know, but needed to know to avoid being misled in making a decision regarding the project.

4.  GSA had knowledge of every fact Relator claims KCP&L withheld, and KCP&L knew GSA had knowledge of those facts.

Respectfully submitted,
**GRAVES BARTLE MARCUS & GARRETT LLC**

/s/Edward D. Greim_____
Todd P. Graves, Mo. Bar No. 41319
Edward D. Greim, Mo. Bar No. 54034
Clayton J. Callen, Mo. Bar No. 59885
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Telephone: (816) 256-4144
Facsimile: (816) 817-0863
*Counsel for Defendant KCP&L*

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the above and foregoing instrument to which this certificate is attached was filed by ECF on May 3, 2013, effecting service on:

>Edward D. Robertson, Jr.
>Anthony L. DeWitt
>BARTIMUS, FRICKLETON,
> ROBERTSON & GORNY, P.C.
>715 Swifts Highway
>Jefferson City, MO 65109
>aldewitt@sprintmail.com
>chiprob@earthlink.net
>
>Jeffrey J. Carey
>CAREY LAW FIRM, LLC
>229 SE Douglas St., Suite 210
>Lee's Summit, MO 64063
>carey@carey-lawfirm.com
>
>*Counsel for Relator*
>
>Thomas M. Larson
>United States Attorney
>400 E 9th Street, Suite 5510
>Kansas City, MO 64105
>(816)426-3130
>Fax: (816) 426-3165
>tom.larson@usdoj.gov

In addition, a true and correct copy of the foregoing instrument was served via U.S. Mail, on May 3, 2013 to the following:

>Jenelle M. Beavers
>United States Attorney's Office
>1100 West Seventh Street, Suite 300
>Tulsa, OK 74119
>Jenelle.Beavers@usdoj.gov

   /s/Edward D. Greim
*Counsel for Defendant KCP&L*