IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| **UNITED STATES ex rel. JAMES KRAXBERGER**, | ) ) ) | |
| Relator/Qui Tam Plaintiff, | ) ) | Case. No. 11-CV-0590-W-FJG |
| v. | ) ) | |
| **KANSAS CITY POWER & LIGHT CO.**, | ) ) ) | |
| Defendant. | ) ) | |

### DEFENDANT KCP&L'S MOTION TO DISMISS RELATOR'S "FALSE RATE PROMISE" THEORY

Defendant Kansas City Power & Light Company ("KCP&L") moves to dismiss Relator's "false rate promise" theory because, under the Public Disclosure Bar of the False Claims Act, this Court lacks jurisdiction or, in the alternative, Relator has failed to state a claim. In further support, KCP&L submits the accompanying Memorandum of Law, affidavit, and exhibits, and states as follows:

1. Under the False Claims Act, "The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed…in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation." 31 U.S.C. § 3730(e)(4) (emphasis added).[1] Only if a relator is an "original source" of the publicly-disclosed information does this Public Disclosure Bar fail to apply.

---

[1] KCP&L cites the post-2010 version of the FCA's Public Disclosure Bar, even though the prior version, which contained an even broader bar, arguably applied to the vast majority of Relator's claimed "false statements." *See U.S. ex rel. Paulos v. Stryker Corp.*, 2013 WL 2666346 *2 (W.D. Mo. June 12, 2013) (decision by Judge Ortrie Smith dismissing claims for wrongful conduct that allegedly began in 2005 and then continued for some period after 2010).

1

2. The United States Supreme Court has instructed that a "Federal report" includes a federal agency's report in response to a Freedom of Information Act ("FOIA") request. *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 131 S.Ct. 1885, 1891, 179 L.Ed.2d 825 (2011).

3. In October and November 2007, GSA provided two FOIA reports in response to a request by Lathrop & Gage, counsel for Trigen, a competitor of KCP&L. The FOIA reports attached documents that specifically addressed KCP&L's bids and statements to GSA regarding the all-electric conversion project.

4. GSA publicly disclosed hundreds of pages to Lathrop.

5. Among the documents produced was a October 4, 2006 Trigen letter to GSA. This is the same letter that Relator relied upon to plead in his Complaint that Trigen had made a "prophecy" that KCP&L could not actually offer the all-electric rates it had allegedly falsely promised to GSA. Relator admitted at his deposition that he received another copy of this document from his father several years later, and used it as the basis for his pleading that KCP&L had made a "core material misrepresentation" that the all-electric rate would apply to the Bolling Building. This was among just 17 pages of materials Relator produced in discovery relating to the all-electric rate issue, all of which he received from his father.

6. GSA also publicly disclosed several letters and cost sheets which indicate that KCP&L explicitly estimated project costs using the all-electric rate. Under Relator's theory, these were false as a matter of law because only the Missouri Public Service Commission ("MPSC") can decide the applicability of rates.

7. GSA also publicly disclosed one of its own internal memoranda of negotiation. It stated that GSA had solicited cost studies from KCP&L and had reviewed those studies to determine that the all-electric project was the most economical of the various heating and

cooling alternatives GSA had been considering.

8. Finally, in the summer of 2008, the project manager for the all-electric conversion project, Joshua Trader, submitted a written and sworn statement to the MPSC reaffirming that GSA had relied on applicability of the all-electric rate in deciding to undertake the all-electric conversion project, and further stating that as a result of not qualifying for the rate, GSA would lose a certain amount of projected savings. This constituted a federal report, and to this day remains available online.

9. If Relator is correct that KCP&L made "knowingly false" statements about the applicability of the all-electric rate in its proposals and communications with GSA, then the proposals, letters, Trigen "prophecy" that KCP&L could not offer the rate, and other information GSA publicly reported to Trigen (or otherwise) amply disclosed the factual basis for Relator's theory. GSA's report disclosed both: (1) KCP&L's allegedly false statements; and (2) the materiality of KCP&L's statements to GSA's decision.

10. Relator filed his initial Complaint in June 2011.

11. Relator admitted at deposition that his only information regarding KCP&L's alleged promises of the all-electric rate came from the 17 pages of Trigen documents he had received from his father (including the October, 2006 Trigen "prophecy" letter that GSA publicly disclosed in the fall of 2007), and from overhearing his supervisor and a GSA worker talk about KCP&L statements about the all-electric rate that they, in turn, had overheard at KCP&L-GSA meetings.

12. Relator admitted at deposition that he never turned over the Trigen materials to the government.

13. Relator was unable to answer at deposition that he had provided any information

3

to the government before filing his Complaint, let alone that he provided information to the government that was independent of and materially added to the information GSA had already publicly disclosed (including the 17 pages of Trigen materials his father had given him).

14. Accordingly, as a matter of law, Relator is not an original source of the information GSA publicly disclosed in 2007, four years before Relator filed his suit.

WHEREFORE, for these reasons and based upon the authorities, exhibits, and affidavit cited in and attached to KCP&L's accompanying Memorandum of Law, KCP&L requests that this Court dismiss that part of Relator's First Amended Complaint that is based upon KCP&L's allegedly knowingly false statements about the all-electric rate.

June 20, 2013

Respectfully Submitted by:

**GRAVES, BARTLE, MARCUS & GARRETT, LLC**

/s/ Edward D. Greim\_\_\_
Todd P. Graves    Mo. Bar No. 41319
Edward D. Greim    Mo. Bar No. 54034
Clayton J. Callen    Mo. Bar No. 59885
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
(816) 256-3181 (telephone)
(816) 256-5958 (facsimile)

*ATTORNEYS FOR DEFENDANT*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing instrument to which this certificate is attached was filed via ECF on June 20, 2013, effecting service on the following counsel of record:

>Edward D. Robertson, Jr.
>Anthony L. DeWitt
>BARTIMUS, FRICKLETON,
> ROBERTSON & GORNY, P.C.
>715 Swifts Highway
>Jefferson City, MO 65109
>aldewitt@sprintmail.com
>chiprob@earthlink.net
>
>Thomas M. Larson
>United States Attorney
>400 E 9th Street, Suite 5510
>Kansas City, MO 64105
>(816)426-3130
>Fax: (816) 426-3165
>tom.larson@usdoj.gov
>
>Jeffrey J. Carey
>CAREY LAW FIRM, LLC
>229 SE Douglas St., Suite 210
>Lee's Summit, MO 64063
>carey@carey-lawfirm.com
>*Counsel for Relator*

In addition, a copy of the foregoing was served via U.S. Mail, postage prepaid, to the following:

>Jenelle M. Beavers
>United States Attorney's Office
>1100 West Seventh, Suite 300
>Tulsa, OK 74119
>Jenelle.Beavers@usdoj.gov

>  /s/Edward D. Greim
>*Counsel for Defendant KCP&L*