IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES ex rel. JAMES KRAXBERGER, | ) ) ) | |
| Relator/Qui Tam Plaintiff, | ) ) | Case. No. 11-CV-0590-W-FJG |
| v. | ) ) | |
| KANSAS CITY POWER & LIGHT CO., | ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS RELATOR'S "FALSE RATE PROMISE" THEORY**

July 15, 2013

Respectfully submitted by:

**GRAVES BARTLE MARCUS
& GARRETT, LLC**

Todd P. Graves, Mo. Bar No. 41319
Edward D. Greim, Mo. Bar No. 54034
Clayton J. Callen, Mo. Bar No. 59885
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
(816) 256-3181 (telephone)
(816) 256-5958 (facsimile)

COUNSEL FOR DEFENDANT KANSAS
CITY POWER & LIGHT

KCP&L's motion is timely, proper, and dispositive of Relator's claim that KCP&L falsely promised the GSA the availability of the all-electric rate. Pushing aside the baseless insinuations and accusations lacing Relator's shrill opposition, Relator offers no explanation as to how the knowledge he purportedly possesses is distinguishable from publicly disclosed information, and he does not qualify as an "original source."

## I. KCP&L's Motion is Timely and Proper

Hoping to dodge the dispositive jurisdictional issue presented by KCP&L's motion, the brunt of Relator's brief focuses on procedural issues, arguing that KCP&L's motion is somehow untimely, or that KCP&L cannot raise the public disclosure bar at this juncture of the litigation. As explained below, these assertions are incorrect.

### A. The Documents Relied Upon by KCP&L Were Produced

Relator states that KCP&L has "dumped" over 500 pages of documents that "Relator has never seen," and argues that the Court may not consider these documents because they were not disclosed to Relator pursuant to Rule 26. *Rel. Br*. 2-4. This is simply inaccurate. The redacted documents upon which KCP&L's motion relies were received by KCP&L pursuant to a Freedom of Information Act ("FOIA") request made to the General Services Administration ("GSA"). These very same documents, however, were produced by the GSA (as part of a larger production) to both KCP&L and Relator pursuant to a subpoena served by KCP&L.[1] The documents the GSA produced in discovery were not redacted, but contained markings identifying the areas that the GSA redacted for purposes of responding to the earlier 2005 FOIA request from Lathrop & Gage. (Doc. 199, Ex. O 31:21-32:12). Likewise, Joshua Trader's written testimony to the Missouri Public Service Commission (Doc. 199, Ex. N) was also produced by

---

[1] The GSA cover letters accompanying the GSA's FOIA responses (both to Lathrop & Gage and KCP&L) were not produced by the GSA, but KCP&L does not substantively rely upon these documents. (Doc. 199, Exs. D-F).

1

the GSA to both parties.

Accordingly, all of the documents Relator complains of having "never seen" were produced to Relator during discovery. As to the redacted documents, KCP&L was not required to have identified these documents in its Rule 26 disclosures, as these documents were "otherwise [] made known" to Relator "during the discovery process," and the redacted copies of these documents do not differ in any "material respect" from the un-redacted copies produced to Relator prior to the GSA's deposition.[2] Fed. R. Civ. P. 26(e).

### B. KCP&L's Motion is Timely and Proper

Relator next argues that, under the amended version of 31 U.S.C. § 3730(3)(4)(A), the public disclosure bar is no longer a jurisdictional bar, and that KCP&L was therefore required to have pled it as an affirmative defense and cannot now raise it by motion. *Rel. Br*. 4-5. Relator's argument fails for several reasons.

#### 1. Prior Version of Section 3730(3)(4)(A) Applies

As noted by Relator, the enactment of the Patient Protection and Affordable Care Act in 2010 amended Section 3730(3)(4)(A). As Judge Otrie Smith recently ruled, however, "the prior version [of the public disclosure bar] applies to conduct occurring before the PPACA was passed." *U.S. ex rel. Paulos v. Stryker Corp.,* 2013 WL 2666346, *2 (W.D. Mo. 2013). Thus, regardless of when a False Claims Act ("FCA") suit is filed, if the underlying conduct occurred prior to the amendment, the previous version is applicable. *Id*. Here, the alleged fraudulent conduct giving rise to Relator's claim—the alleged false rate promise by KCP&L and the GSA's reliance on that promise—occurred prior to the enactment of the PPACA in 2010. Relator alleges

---

[2] With its motion, KCP&L submitted an affidavit authenticating the documents it received from the GSA in response to KCP&L's FOIA request. (Doc. 199, Ex. C). In addition, the documents produced by the GSA pursuant to KCP&L's subpoena (which contained the documents provided in response to KCP&L's FOIA request) were authenticated by an affidavit from the GSA's records custodian, which was also included with KCP&L's motion. (Doc. 199, Ex. P). Thus, Relator's objection that these documents have no "evidentiary basis" lacks merit.

2

in his Complaint that KCP&L's "false representations" occurred between 2005-2007. (Doc. 1, ¶ 53). Indeed, the Bolling Building conversion project was completed in 2008, two years prior to the enactment of the PPACA.

Nonetheless, Relator argues that, because the PPACA "strips the jurisdictional language from the statute," the PPACA constitutes an amendment to a "jurisdictional statute," and the amended version of the public disclosure act can therefore be applied "even when the applicable conduct occurred before the effective date of the amendment." *Rel. Br*. 4-5. But this is the same argument that the Supreme Court rejected in *Hughes Aircraft Co. v. U.S. ex rel. Schumer,* 520 U.S. 939 (1997), in the very same context as this. At issue in *Hughes* was a 1986 amendment to the FCA. Relying upon *Landgraf v. USI Film Products,* 511 U.S. 244 (1994), as Relator does here, the respondent in *Hughes* argued that an amendment to the FCA conferring jurisdiction was not subject to the presumption against the retroactive application of a statute. *Hughes*, 520 U.S. at 946. The Court, however, disagreed, disposing of the notion that amendments affecting "jurisdiction" are immune from the general presumption against retroactivity:

> Statutes merely addressing *which* court shall have jurisdiction to entertain a particular cause of action can fairly be said merely to regulate the secondary conduct of litigation and not the underlying primary conduct of the parties. Such statutes affect only *where* a suit may be brought, not *whether* it may be brought at all. The 1986 amendment, however, does not merely allocate jurisdiction among forums. Rather, it *creates* jurisdiction where none previously existed; it thus speaks not just to the power of a particular court but to the substantive rights of the parties as well. Such a statute, even though phrased in "jurisdictional" terms, is as much subject to our presumption against retroactivity as any other.\*\*\* In sum, whether we consider the relevant conduct to be Hughes' disclosure to the Government or its submission of the allegedly false claim, disclosure of information about the claim to the Government constituted a full defense to a *qui tam* action prior to 1986. If applied in this case, the legal effect of the 1986 amendment would be to deprive Hughes of that defense. *Id*. at 951-52.

The same principle applies here. If, as Relator argues, the 2010 amendment to Section 3730(3)(4)(A) "confers jurisdiction" where none previously existed, *Rel. Br*. 6, it does not affect

"*where*" Relator's suit can be brought, but instead, "*whether* it may be brought at all." *Id*. And, like in *Hughes*, conferring jurisdiction on Relator would have the effect of eliminating KCP&L's subject matter jurisdiction defense. *See* Fed. R. Civ. P. 12(b)(1), (h)(3). Accordingly, in *U.S. ex rel. Paulos*, Judge Smith correctly relied upon the "guiding authority" of *Hughes* in finding that the amended version of Section 3730(3)(4)(A) does not retroactively apply to conduct occurring prior to its enactment in 2010. 2013 WL 2666346, *2. That is also true here.

2. <u>Legal Impact of Public Disclosure Bar is Unchanged</u>

Even assuming *arguendo* that the amended version of Section 3730(e)(4) applies to Relator's claim, Relator fails to show that the 2010 amendment changed the jurisdictional nature of the public disclosure bar. The previous version Section 3730(e)(4) expressly stated that "[n]o court shall have jurisdiction" over claims subject to the bar, whereas the amended version states that a "court shall dismiss" (unless opposed by the United States) such claims. Relator relies on the removal of the word "jurisdiction" to argue that Section 3730(e)(4) no longer constitutes a jurisdictional bar. *Rel. Br*. 4-6. But Relator places too much emphasis on the existence of this single word. In *Rockwell Intern. Corp. v. United States*, 549 U.S. 457 (2007), the Supreme Court held that the prior version of Section 3730(e)(4) constituted a subject matter jurisdiction bar. In doing so, however, the Court noted that "jurisdiction is a word of many, too many, meanings," and pointed out that Section 3730(e)(4) "speaks to 'the power of a particular court' as well as the substantive rights of the parties.'" *Id*. at 467. (citation omitted). In this respect, the 2010 amended version of Section 3730(e)(4) remains unchanged. It limits *who* may bring an FCA claim.

3. <u>KCP&L's Motion is Proper and Timely Under Rule 12(h)</u>

Finally, irrespective of which version of Section 3730(e)(4) applies, and irrespective of whether the amended version of Section 3730(e)(4) provides a jurisdictional bar or merely

4

requires dismissal for failure to state a claim, KCP&L's motion is proper and timely. Rule 12(h)(3) provides that if "the court determines at any time it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added). A lack of subject matter jurisdiction defense is not waived by failing to plead it in an answer or raise it at some early juncture of litigation. Fed. R. Civ. P. 12(h)(1). In addition, a motion raising this defense may include matters outside the pleadings without converting the motion into a summary judgment motion under Rule 56. *See* Fed. R. Civ. P. 12(d). *See also U.S. ex rel. Paulos,* 2013 WL 2666346, *3 ("materials outside the pleadings may be considered").

Similarly, the defense of a "failure to state a claim upon which relief can be granted" is not waived by failing to include it in an answer, and it may be raised by a "motion under Rule 12(c)" or "at trial." Fed. R. Civ. P. 12(h)(1)-(2). Rule 12(c), in turn, provides that a motion for judgment on the pleadings may be filed "[a]fter the pleadings are closed—but early enough not to delay trial…." Fed. R. Civ. P. 12(c). Here, KCP&L filed its motion on June 20, 2013, 52 days in advance of this Court's August 12, 2013 trial setting. Likewise, in considering a motion for failure to state a claim, this Court may consider matters beyond the four-corners of the complaint, including "'matters incorporated by reference or integral to [Relator's] claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case…without converting the motion into one for summary judgment." *Miller v. Redwood Toxicology Laboratory, Inc.*, 688 F.3d. 928, 931 n. 3 (8th Cir. 2012). *See also* 5C Fed. Prac. & Proc. Civ. § 1371 (3d ed.) (noting that conversion rule for Rule 12(c) motions is "entirely consistent with the practice under Rule 12(b)(6)"). "[F]acts of which [a court] may take judicial notice" include "reports from government agencies." *U.S. ex rel. Paulos*, 2013 WL 2666346, *3. The substantive exhibits attached to KCP&L's motion are derived from the GSA's FOIA

response (*i.e.* a governmental report, *see infra*), publicly available documents, and/or documents from the record of this case.[3]

Relator contends that KCP&L's motion "wreaks havoc" on this Court's scheduling order, arguing it must be treated as a summary judgment motion, and that KCP&L is in "violation of the scheduling order." *Rel. Br*. 4-5. But, as explained above, KCP&L's motion is properly filed under Rule 12, and it need not be converted into a summary judgment motion. Nor is KCP&L's motion untimely under this Court's scheduling order, which expressly excludes motions permitted by Rule 12(h)(2)-(3) from the May 3 deadline for filing motions. (Doc. 34, ¶ 5).[4]

## II. Relator's False Rate Promise Claim is Barred

As explained in KCP&L's opening brief, the alleged fraudulent conduct, or "transaction," giving rise to Relator's claim was publicly disclosed by the GSA in response to a FOIA request in 2007. *KCP&L Br*. 5-9. In response, Relator argues at length that he never saw the GSA's 2007 FOIA response. *Rel. Br*. 8-11. Relator misses the point.

The public disclosure bar applies irrespective of whether Relator actually saw the publicly disclosed information at issue. *Minnesota Ass'n of Nurse Anesthetieist v. Allina Health System Corp*., 276 F.3d 1032, 1045 (8th Cir. 2002) (adopting "majority view [] that a qui tam suit is 'based upon' a public disclosure whenever the allegations in the suit and in the disclosure are the same, 'regardless of where the relator obtained his information.'") (citation omitted). This controlling interpretation of the pre-2010 version of Section 3730(e)(4) reasons that construing the term "based upon" to require a relator to have relied upon the public disclosure to support his

---

[3] In addition to being included in the GSA's FOIA disclosure, Exhibits B and H (Doc. 143, Ex. HH), Exhibit I (Doc. 143, Ex. Y), and Exhibit K (Doc. 143, Ex. O) were also attached to KCP&L's summary judgment brief.
[4] Curiously, Relator cites *U.S. ex rel. Jamison v. McKesson Corp*., 649 F.3d 322 (5th Cir. 2012), for the proposition that, because the 2010 amended version of the public disclosure bar is no longer jurisdictional, it "is best understood as an affirmative defense." *Rel. Br*. 7. That case, however, considered only the *pre-2010 version* of Section 3730(e)(4), and simply noted that the moving party must "point to documents" that "plausibly" show that a relator's claim is based upon public disclosures. *Id*. at 327. KCP&L has done so here.

6

claims would make the original source exception—which requires a relator to have "independent" knowledge—surplusage. *Id*. at 1045-47. Notably, the 2010 amendment to the public disclosure bar removed the phrase "based upon" altogether, requiring only the "same allegations or transactions" to have been "publicly disclosed." 31 U.S.C. § 3730(e)(4)(A). Thus, neither version of Section 3730(e)(4)(A) requires a relator to have actually seen and relied upon the publicly disclosed information.

Nonetheless, Relator argues that "[w]here a government report is not disclosed to the relator or the general public, it cannot form the basis for a public disclosure to any except the requester." *Rel. Br*. 9, n. 11. This is simply not the law. First, as noted above, Section 3730(e)(4) does not require a relator to have seen and reviewed the public disclosure at issue. Addressing the same argument that Relator raises here, *Schindler* noted that this "question has divided the Courts of Appeals, and we do not resolve it…." *Id*. at 1895. Under the majority rule adopted in this Circuit, whether Relator saw the GSA's 2007 FOIA response is inapposite. Second, as the Supreme Court held in *Schindler*, a FOIA response from a governmental agency constitutes a governmental "report" for purposes of the public disclosure bar. 131 S.Ct. at 1891. Because it is a governmental report, a FOIA response is a *per se* public disclosure under Section 3730(e)(4)(A). *See id*. at 1895 (noting that Section 3730(e)(4)(A) applies to "some *methods* of public disclosure and not to others") (emphasis added). Put simply, a governmental "report" to a member of the public constitutes a public disclosure regardless of whether the recipient disseminates that report to the "general public." Indeed, if Relator's theory was correct, the public disclosure bar would not apply to a relator who was the *recipient* of a FOIA response— like the relator in *Schindler*—if the relator did not also disclose it to the "general public."

7

### A. The Public Disclosure Revealed the Same Transaction

Relator next argues that the GSA's FOIA response did not contain "substantially the same allegations or transactions" as alleged by Relator. *Rel. Br.* 7. As explained in KCP&L's opening brief, the FOIA disclosure plainly reveals the "transaction" giving rise to Relator's claim that KCP&L falsely "promised" the all-electric rate to the GSA. *KCP&L Br.* 2-8. Relator concedes that the alleged "promise" of the all-electric rate is "disclosed in the documents," *Rel. Br.* 9, but argues that the FOIA response "does not show that KCP&L was unable to give the GSA the all-electric rate." *Rel. Br.* 9. The falsity that Relator alleges, however, is not that the all-electric rate was not ultimately provided to the GSA, but rather, that KCP&L could not "promise" the all-electric rate because its rates are subject to regulation and approval by the PSC. This fact was plainly disclosed in Trigen's "protest" letter to the GSA, which Relator testified "spelled out to GSA that they weren't going to get" the rate. (Doc. 199, Ex. A 71:13-23).

In any event, the PSC order restricting the rate, and the ultimate tariff approved by the PSC, are documents publicly disclosed in an "administrative hearing." 31 U.S.C. § 3730(e)(4)(A) (pre-2010 amendment). *See also U.S. ex rel. Poteet v. Bahler Medical, Inc.,* 619 F.3d 104, 113 (1st Cir. 2010) (as used in Section 3730(e)(4)(A), "hearing" is synonymous with "proceeding"). Moreover, Joshua Trader's testimony (Ex. N) reveals that the GSA did not qualify for the all-electric rate under the PSC's December 2007 order. Relator asserts that his testimony merely reflects that the "MSPC ruling put [the all-electric rate] at risk" for the GSA. *Rel. Br.* 11. But the very purpose of Mr. Trader's testimony was to describe the "impact on [the GSA] of the Commission's decision to limit the availability" of the rate, which he described as a "revocation of the rate" to the GSA. (Doc. 199, Ex. N, p. 3-4).[5]

---

[5] Relator argues that Mr. Trader's testimony does not qualify as a "news media" public disclosure because it "can't be found with a Google search." *Rel. Br.* 11-12 (noting that "news is instantly and publicly available" on Google).

8

In sum, using the analogy cited by Relator, publicly disclosed documents reveal the "X and Y," *i.e.* the essential elements of Relator's claim, from which "Z" (Relator's allegation of fraud) can be inferred. *Rel. Br.* 7. If the alleged fraud is not "readily apparent" from these publicly disclosed documents, it is simply a testament to the flimsy nature of Relator's claim.

### B. Relator is Not an Original Source

Because the facts giving rise to Relator's claim have been publicly disclosed, Relator's claim is barred unless he qualifies as an "original source" under Section 3730(e)(4)(B). Relator states that he "pleaded his status as an original source." *Rel. Br.* 12. But this conclusory allegation is irrelevant absent any factual basis or "supporting details." *U.S. ex rel. Bartz v. Ortho-McNeil Pharmaceutical, Inc.*, 856 F. Supp. 2d 253, 267 (D. Mass. 2012). Under the pre-2010 version of Section 3730(e)(4)(B), Relator must demonstrate that he possessed "direct and independent" knowledge of the information giving rise to his allegations. Under the amended statute, Relator must demonstrate that his knowledge is "independent of and materially adds to the publicly disclosed allegations or transactions." Relator cannot meet either standard.

"To say [that] knowledge is 'direct' means the relator obtained personal knowledge of the information on his or her own and did not derive it from other sources." *U.S. ex rel. Paulos*, 2013 WL 2666346, *9. Accordingly, "a person cannot have direct and independent knowledge of information (and thus cannot be an original source) if he or she obtained the information second-hand. This is true even if that information was derived from an original source." *Id.* at *9. All of Relator's alleged knowledge arises came from (a) information provided to him by his father, (b) conversions he overheard between his supervisor Steve Marchand and GSA employees, and (c) conversations he had with GSA employee Peter Castronuovo. (Doc. 199, Ex. A). Relator's mere

---

Yet, a simple Google search for "GSA Bolling Building All Electric Rate" reveals Mr. Trader's testimony in the third search result from the top. *See* "Notice of Ex Parte Contact – Efis.psc.mo.gov." Thus, Mr. Trader's testimony was also publicly disclosed. *See U.S. ex rel. Oliver v. Phillip Morris USA Inc.*, 2013 WL 2637032 (D.D.C. 2013).

9

presence in the Bolling Building does not somehow convert this secondhand knowledge into direct knowledge. Incredibly, though Relator's theory of fraud is based upon an alleged rate promise by KCP&L, Relator admitted that he did not attend any meetings between the GSA and KCP&L, never heard a KCP&L representative "say anything," and never reviewed any of KCP&L's proposals containing cost estimates. (Doc. 199, Ex. A 46:4-11, 57:21-58:5). Other than general references to "work[ing] on the boilers and [] cleaning up KCP&L's mistakes," Relator cites no examples of witnessing "the conduct involved in [his] claim." *Rel. Br.* 14. Indeed, as revealed at Relator's deposition, his knowledge regarding the central element of his claim—KCP&L's alleged false "promise" of the all-electric rate to the GSA—came from a packet of information provided to him by his father. (Doc. 199, Ex. A).

Similarly, Relator's secondhand knowledge does not "materially add" to the publicly disclosed information. As it relates to claim at issue in this motion (*i.e.* the false rate promise claim), the only "knowledge" (secondhand or direct) cited by Relator is that "[h]e knew about the rate promise" and he "knew about the fact that GSA did not get the rate[]...." *Rel. Br.* 13-14. But Relator concedes that the FOIA disclosure contained the alleged rate promise, and, as discussed above, it was publicly disclosed that the GSA "did not get the rate." Thus, Relator's alleged knowledge adds nothing of substance to the publicly disclosed information.

As Judge Smith noted, "courts must be wary of qui tam suits that 'add some color' to previously publicized allegations but that 'ultimately target[] the same fraudulent scheme.'" *U.S. ex rel. Paulos*, 2013 WL 2666346, *9 (citation omitted). Relator's knowledge giving rise to his claim that KCP&L falsely promised the all-electric rate to the GSA is not direct and does not materially add to publicly disclosed information. As such, he is not an original source.

KCP&L's motion to dismiss (Doc. 198) should be granted.

Respectfully Submitted by:

**GRAVES, BARTLE, MARCUS & GARRETT, LLC**

/s/ Clayton J. Callen
Todd P. Graves      Mo. Bar No. 41319
Edward D. Greim     Mo. Bar No. 54034
Clayton J. Callen   Mo. Bar No. 59885
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
(816) 256-3181 (telephone)
(816) 256-5958 (facsimile)

*ATTORNEYS FOR DEFENDANT*

11

# CERTIFICATE OF SERVICE

       This is to certify that a true and correct copy of the above and foregoing instrument to which this certificate is attached was filed via ECF on July 15, 2013, effecting service on the following counsel of record:

       Edward D. Robertson, Jr.       Thomas M. Larson
       Anthony L. DeWitt       United States Attorney
       BARTIMUS, FRICKLETON,       400 E 9th Street, Suite 5510
       ROBERTSON & GORNY, P.C.       Kansas City, MO 64105
       715 Swifts Highway       (816)426-3130
       Jefferson City, MO 65109       Fax: (816) 426-3165
       aldewitt@sprintmail.com       tom.larson@usdoj.gov
       chiprob@earthlink.net

       Jeffrey J. Carey
       CAREY LAW FIRM, LLC
       229 SE Douglas St., Suite 210
       Lee's Summit, MO 64063
       carey@carey-lawfirm.com
       *Counsel for Relator*

       In addition, a copy of the foregoing was served via U.S. Mail, postage prepaid, on July 15, 2013 to the following:

       Jenelle M. Beavers
       United States Attorney's Office
       1100 West Seventh, Suite 300
       Tulsa, OK 74119
       Jenelle.Beavers@usdoj.gov

                             /s/Clayton J. Callen
                            *Counsel for Defendant KCP&L*