**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES ex rel. JAMES** | ) | |
| **KRAXBERGER**, | ) | |
| | ) | |
| Relator/Qui Tam Plaintiff, | ) | Case. No. 11-CV-0590-W-FJG |
| | ) | |
| v. | ) | |
| | ) | |
| **KANSAS CITY POWER & LIGHT CO**., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER**

Currently pending before the Court is Defendant's Motion to Dismiss (Doc. No. 198).

**I.      Background**

This case was initiated under the False Claims Act by Relator against Kansas City Power & Light Company ("KCP&L") on June 9, 2011 (Doc. No. 1).  Relator filed his First Amended Complaint on April 19, 2012 (Doc. No. 10).  The facts of Relator's Complaint surround a contract for services between Trigen-Kansas City Energy Corporation ("Trigen) and the U.S. Government Services Administration ("GSA").  Trigen was providing services to GSA, which GSA believed could be provided at a lower cost by another company.  GSA contacted KCP&L for an estimate.  KCP&L subsequently proposed a contract under an "all-electric" rate to GSA, which GSA accepted.  Relator states this contract was fraudulently induced.  Accordingly, the First Amended Complaint asserts the following:  Count I – Violation of 31 U.S.C. § 3729(a)(1)(A) False Claims; Count II – Violation of 31 U.S.C. § 3729(a)(1)(B) False Records; Count III – Violation of 31 U.S.C. § 3729(a)(1)(C) Conspiracy to Submit False Claims.  (Doc. No. 1).

The essence of Relator's allegations in the Complaint are as follows:

26. At the very core of the deal for the conversion to an all-electric building was KCP&L's promise (or representation) that it would give the GSA a special electric rate that would make it possible for GSA to generate its own steam for the same or lower net cost as it could buy it from Trigen. Had KCP&L asked to have the project approved at its stock electrical rates for business customers, the rates would have made the electrode boilers too costly to operate, and all of the economic incentive for the government to switch to all electric would have vanished.

27. Trigen protested, in October of 2006, that KCP&L could not give the GSA/PSA the rate KCP&L was promising and explained they were regulated by the Missouri Public Service Commission ("MPSC"). The PSC's rules and regulations made the rate GSA was promised impossible without offering the same rate to similarly situated utility customers.

32. Trigen's prophecy about the electric rates turned out to be correct. KCP&L could not, in fact, offer the rates it promised the GSA and the GSA took no action to enforce the rate promise. The result is that the government has paid approximately $80,000 per month for the last four years above the amount it would have paid for Trigen piped-in steam.

53. The claims were false in that:

a. KCP&L charged GSA a higher rate for electrical service than it had promised to charge when it sought to have the conversion of the building to an all-electric building awarded to it.

54. The false representation of the electrical rate was material in that it had the capacity to affect the government's payment decision in that it promised the GSA that the savings from the reduced rate would pay for the installation of the electrode boilers.

64. The representations were made knowingly in that KCP&L had no intention of ever giving the GSA lower rates or, in the alternative, were made with reckless disregard for the actual ability to offer the lower rates.

73. Defendant made false records in that it submitted documents showing it would offer a lower rate when it knew or in the exercise of reasonable diligence should have known that it could not charge that rate.

(Doc. No. 10).

On October 26, 2006, Lathrop & Gage, counsel for Trigen, sent a Freedom of Information Act ("FOIA") request to GSA for the following:

- All documents relating to any bid, proposal and/or offer by Kansas City Power & Light a/k/a Great Plains Energy, and/or any of their subcontractors (collectively, "KCPL"), to provide utilities, products and/or services (collectively, "Services") to GSA at the Bolling Federal Building which were received by GSA in the last three years; and

- All contracts, term sheets, letters of intent, memoranda of understanding and/or agreements entered into between GSA and KCPL (or any of its subcontractors) related to the provision of Services by KCPL at the Bolling Federal Building in the last three years.

(Doc. No. 199-5).

On October 26, 2007 and November 27, 2007, GSA responded to the FOIA inquiry with several documents, some of which were produced years later in discovery in the instant suit. These documents include the following:

(1) October 4, 2006 Trigen Letter. This stated that electric boilers were prohibited in GSA buildings and more costly.

(2) February 21, 2006 Email Chain Regarding All Electric Rate Savings. This email chain addressed KCP&L's "all-electric" rates, Trigen's rates, savings, and internal discussion about this rate structure.

(3) February 21, 2006 Letter of Jan Bramal Regarding Qualification for the All-Electric Rate. This email from KCP&L to GSA explicitly stated that GSA would qualify for the all-electric rate.

(4) June 2005 and February 2006 Proposals Showing the All-Electric Rate Savings. This document showed a cost analysis summary of the all-electric rate.

(5) September 27, 2005 Bramel Letter Regarding Reduced Costs from the All-Electric Rate. This letter from KCP&L to GSA explicitly stated that the all-electric rate was, in KCP&L's opinion, the best energy solution for the project.

(6) July 31, 2006 GSA Memorandum Explaining Study and Choice of All-Electric Option. This memorandum stated that new building plants were determined to be the most economical with savings over a 20 year period. This would employ electric steam boilers.

(7) Sworn Report of Joshua Trader Regarding GSA Reliance on All-Electric Rate. Joshua Trader, Project Manager for GSA, testified before the MPSC in April 2008 to "describe the impact on [GSA] of the Commission's decision to

limit the availability of KCP&L's general service all-electric tariffs and separately-metered space heating rates to those customers receiving service under the rate as of January 1, 2008."  Trader testified that GSA made financial decisions based on KCP&L's all-electric rates.  He further stated, "GSA expected to realize approximately $85,000 annually in utility costs savings from the all-electric/space-heating rate.  The life-cycle-cost-analysis performed as part of GSA's financial decision making process used the all-electric/space-heating rate as input as this rate effectively reduced the cost per kilowatt hour for electricity. The revocation of the rate has negatively affected the projected costs savings as well as the life-cycle-cost of the project and altered information upon which financial decisions were made at the project development stage." https://www.efis.psc.mo.gov/mpsc/commoncomponents/viewdocument.asp?DocId=510648324

(Doc. No. 199).

On June 20, 2013, Defendant filed the present Motion to Dismiss asserting a lack of subject matter jurisdiction (Doc. No. 198).  Defendant moves to dismiss Relator's "false rate promise" theory because, Defendant asserts that under the Public Disclosure Bar of the False Claims Act, this Court lacks jurisdiction, or, in the alternative, Relator has failed to state a claim. Only if Relator is an original source of the publicly disclosed information does the Public Disclosure Bar fail to apply, which is not evident in this case. (Doc. No. 198 & 199).

**II.     Standard of Review**

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiff.  Graham Constr. Serv., Inc. v. Hammer & Steel, Inc., No. 4:11-CV-1316 JCH, 2012 WL 685459, at \*2 (E.D. Mo. Mar. 2, 2012) (citing Eckert v. Titan Tire Corp., 514 F.3d 801,806 (8th Cir. 2008)).  Additionally, the Court must accept the allegations contained in the Complaint as true and draw all reasonable inferences in favor of the nonmoving party.  Id. (citing Coons v. Mineta, 410 F.3d 1036 (8th Cir. 2005)).  A motion to dismiss must be granted, however, if the complaint does not contain enough facts to state a claim to relief that is plausible on its face.  Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  While a Complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Id. Stated differently, to survive a motion to dismiss the Complaint's factual allegations, must be enough to raise a right to relief above the speculative level.  Id.

**III.    Discussion**

**A.) Procedural Arguments**

Relator states the Court should not consider Defendant's Motion to Dismiss for several procedural reasons.  First, Defendant's motion is untimely.  Defendant had the FOIA materials prior to Defendant's Rule 26 supplementation and did not mention them.  As such, pursuant to Federal Rule of Civil Procedure 37(c)(1), Defendant should not be permitted to use this information, now, to its benefit.  Second, there is no evidentiary basis for the FOIA materials. The Defendant has produced no custodian of records affidavit and has not obtained a stipulation to the admissibility of the documents.  Thus, Defendant has not laid a proper evidentiary

foundation for the documents to be used in this action.  As such, Relator objects to their

consideration.  Third, the Defendant's motion wreaks havoc on the Court's Scheduling Order.

Federal Rule of Civil Procedure 12(d) provides that if matters outside of the pleadings are

presented on a Rule 12(b)(6) or Rule 12(c) motion, then the motion must be presented as a

motion for summary judgment.  Relator has not had time to review and thus, would need an

extension of time to sufficiently respond.  This could affect the Court's scheduled trial date of

August 12, 2013.  Finally, the Patient Protection and Affordable Care Act ("PPACA") of 2010,

amended the Public Disclosure Provision to make it an affirmative defense.  This defense was

not pleaded by Defendant here and thus, Defendant should be permitted to assert it now.  Given

the above, Relator states this Court should not consider the substantive arguments made in

Defendant's Motion to Dismiss.

Defendant responds that its motion was properly filed.  First, the documents relied upon

by Defendant were timely produced by the GSA to both KCP&L and Relator pursuant to a

subpoena served by KCP&L.  Second, the conduct giving rise to Relator's claim – the alleged

false rate promise by KCP&L and the GSA's reliance on that promise –occurred prior to the

enactment of the PPACA in 2010.  Third, irrespective of which version of the PPACA applies,

Defendant's motion is proper and timely in that Rule 12(h)(3) provides that if "the court

determines at any time it lacks subject-matter jurisdiction, the court must dismiss the action."

Fed. R. Civ. P. 12(h)(3).  Finally, the defense of "failure to state a claim" is not waived by failing

to include it in an answer, and it may be raised by a motion under Rule 12(c) or at trial.  Since

Rule 12(c) provides that a motion may be filed after the pleadings are closed, but early enough to

not delay trial and this motion was filed 52 days in advance of the Court's trial setting, Relator's

argument is flawed.  Likewise, in considering a motion for failure to state a claim, the court can

consider matters beyond the four-corners of the complaint, including items subject to judicial notice and matters of public record without converting the motion into one for summary judgment. Accordingly, Defendant states the Court should consider the substantive arguments advanced in its Motion to Dismiss.

The procedural arguments advanced by Relator lack merit. First, the documents relied on by Defendant were produced by the GSA to Relator. (Doc. No. 199). Second, the Court may take judicial notice of public records and consider them on a motion to dismiss. Stahl v. U.S. Dept. of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003). Therefore, no evidentiary basis is necessary for consideration of the FOIA materials, as they are considered public documents. Schindler Elevator Corp., v. U.S. ex rel. Kirk, 131 S.Ct. 1885, 1893 (2011). Third, subject matter jurisdiction can be raised at any time. Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 571 (2004). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P. 12(h)(3). Thus, Relator's procedural arguments lack merit and the Court will proceed to consider Defendant's substantive arguments.

**B.) Substantive Arguments**

Under the False Claims Act, "The court shall dismiss an action or claim under this section, unless opposed by the Government if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed…in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation." 31 U.S.C. § 3730(e)(4). This does not apply if the person bringing the action is an original source of the information. Id. An "original source" is "an individual….who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who

has voluntarily provided this information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B)(ii).

Defendant states that GSA's prior FOIA report is a public disclosure under the False Claims Act. Specifically, the core document upon which Relator based allegations in his Complaint that KCP&L made a knowingly false promise about the all-electric rate – the October 4, 2006 Trigen Letter - was disclosed by GSA in response to a 2006 FOIA request. The other documents produced by GSA in its FOIA response further demonstrated the two main elements of Relator's fraud claim: (1) that KCP&L falsely promised the all-electric rate by using it in its proposals for the building and (2) that this was material to GSA's decision. Further, the materials show the precise savings KCP&L estimated under the all-electric rate as compared to the large general power service rate – something Relator himself never saw before filing this lawsuit. Additionally, Joshua Trader's MPSC submission qualifies as a report and news media. Therefore, these materials, collectively, are more than sufficient to disclose the facts that make up the elements of Relator's claim. Since these essential elements of Relator's fraudulent transaction or "false-rate promise" theory were fully articulated in GSA's FOIA response, Relator can only survive the False Claim Act's jurisdictional bar if he is an original source. (Doc. No. 198, 199, & 204).

Defendant states Relator cannot meet his burden of proving he is an original source. Relator does not claim to have ever disclosed his documents to the Government and in fact, may even have obtained the Trigen letters after the GSA's FOIA response. Accordingly, this Court must dismiss Relator's lawsuit for purposes of the Public Disclosure Bar for lack of subject matter jurisdiction. (Doc. No. 198, 199 & 204).

Relator states that Defendant's argument is flawed because "substantially the same allegations or transactions" have not been publicly disclosed. Defendant engaged in a document dump, submitting over 500 pages of exhibits and arguing that the information was all public. The Public Disclosure Bar, however, requires more. It only bars suits based on publicly disclosed allegations or transactions, not information. None of the documents provided by Defendant, here, qualifies because (1) the documents were not disclosed timely and (2) even if used, the documents could not establish true public disclosure because they fail to show (a) what the Government promised and (b) what the Government received. Defendant cannot show that Relator ever had access to the FOIA materials and does not even bother to try. Further, the FOIA data revealed the Trigen prediction, not the fact that Trigen was right. Neither set of documents shows that GSA did not get the all-electric rate, only that the MPSC ruling put it at risk. Additionally, there is no way that a third party not in the Bolling Building could have put together the complaint in this case from the FOIA documents. Finally, Relator states he is an original source. Relator learned the details contained in the Complaint through personal knowledge of the rate debacle, derived from his work at GSA and documents he received from his father, who was also an employee of GSA. Accordingly, Relator argues this case does not meet the elements required for the Public Disclosure Bar and thus, should not be dismissed. (Doc. No. 200).

The Court finds that substantially the same allegations or transactions as alleged in this lawsuit were publicly disclosed. First, a written agency response to a FOIA request falls within the ordinary meaning of "report" as provided under 31 U.S.C. § 3730(e)(4)(A). Schindler, 131 S.Ct. at 1893. As such, the documents GSA provided in response to Trigen's FOIA request were considered public. Second, Trader's MPSC submission qualifies as a report and news media.

Schindler, 131 S.Ct. at 1893 (noting that the ordinary meaning of "report" is an "account or announcement that is prepared, presented, or delivered, usually in formal or organized form"); U.S. ex rel. Oliver v. Philip Morris USA Inc., Case No. 08-0034-CKK, 2013 WL 2637032, *6-7 (D.D.C. June 13, 2013) (noting that courts have defined news media under the FCA to include readily accessible websites). As such, it is also considered public. The Court finds that the documents and submissions reflect the allegation of fraud or critical elements of the fraudulent transaction comprising Relator's "false-rate promise" theory. U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 654 (D.C. Cir. 1994). As such, Relator's claims are barred under the Public Disclosure Bar, unless Relator can meet his burden of proving that he is an original source.

However, the Court finds that Relator has failed to meet his burden of proving that he is an original source. Relator obtained his information from his father, conversations he overheard, and other second-hand conversations he had with GSA employees (Doc. No. 198, 199, 200 & 204). This is insufficient. U.S. ex rel. Paulos v. Stryker Corp., Case No. 11-0041-CV-W-ODS, 2013 WL 2666346, *9 (W.D. Mo. June 12, 2013) (noting that an original source obtains personal knowledge of the information on his or her own and does not derive it from other sources; therefore a person cannot be an original source if he or she obtained the information second-hand). Accordingly, the Public Disclosure Bar of the False Claims Act forecloses the subject matter jurisdiction of this Court.

**IV.    Conclusion**

Accordingly, for the reasons stated above, Defendant's Motion to Dismiss (Doc. No. 198) is hereby **GRANTED.**

The Court notes that Defendant's Motion to Dismiss requests that this Court "dismiss that part of Relator's First Amended Complaint that is based upon KCP&L's allegedly knowingly false statements about the all-electric rate" (Doc. No. 198). After reviewing the Court's ruling on the Motion to Dismiss, the parties should advise the Court what claims, if any, they believe still remain pending after this ruling. The parties shall file their submissions of five pages or less **on or before July 23, 2013 at 9am**.

**IT IS SO ORDERED.**


Date: July 19, 2013                                    **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                                  Fernando J. Gaitan, Jr.
                                                       Chief United States District Judge